962 So.2d 272 (2005)
Alonzo L. BURGESS
v.
STATE of Alabama.
No. CR-02-0977.
Court of Criminal Appeals of Alabama.
September 30, 2005.
Opinion Granting Rehearing November 23, 2005.
Certiorari Denied February 23, 2007.
*276 Cathleen I. Price, Montgomery, for appellant.
Troy King and William H. Pryor, Jr., attys. gen., and Jon B. Hayden and Jasper B. Roberts, Jr., asst. attys. gen., for appellee.
Alabama Supreme Court 1050290.
WISE, Judge.
The appellant, Alonzo L. Burgess, an inmate on death row at Holman Correctional Facility, appeals the denial of his petition for postconviction relief filed pursuant to Rule 32, Ala.R.Crim.P., attacking his capital-murder conviction and death sentence.
In 1994, Burgess was convicted of capital murder for the killing of Shelia Nnodimele and two of her children, Latoria Long and Alexis Nnodimele, "by one act or pursuant to one scheme or course of conduct," a violation of § 13A-5-40(a)(10), Ala.Code 1975. Burgess was also convicted of attempting to murder Nnodimele's third child, LaRico Long, a violation of §§ 13A-4-2 and 13A-6-2, Ala.Code 1975. The jury recommended, by a vote of 8 to 4, that Burgess be sentenced to life imprisonment without the possibility of parole. The circuit court chose not to follow the jury's recommendation and instead sentenced Burgess to death. Burgess's conviction and sentence were affirmed on direct appeal. See Burgess v. State, 723 So.2d 742 (Ala.Crim.App.1997), aff'd, 723 So.2d 770 (Ala.1998), cert. denied, 526 U.S. 1052, 119 S.Ct. 1360, 143 L.Ed.2d 521 (1999). The direct appeal was final when we issued the certificate of judgment on November 10, 1998.
On March 15, 2000, Burgess filed a Rule 32 petition.[1] In September 2000, Judge Tompkins dismissed many of the claims presented in the petition after concluding that they were procedurally barred. Burgess filed an amended Rule 32 petition in February 2002. On February 25, 2002, an evidentiary hearing was held before Judge Hughston. On January 17, 2003, the circuit court issued an order denying the Rule 32 petition. This appeal followed.
The State's evidence at Burgess's trial tended to show that on January 30, 1993, Burgess called out of the door of Shelia Nnodimele's mobile home to the neighbors across the road and asked them to come over to the mobile home. Shelia and Burgess had been living together in Shelia's *277 trailer with her three children. As the neighbors approached Shelia's trailer they saw that Burgess was holding a shotgun. Before they could reach the trailer Burgess pointed the shotgun at his chest and fired.
Police discovered a handwritten suicide note that was subsequently identified as having been written by Burgess. The note said: "The reason for this is because the relationship wasn't . . . [not legible] and I didn't have her mother or father on my side, and at first, I really tried to get to know them." The note also said to look in the bedrooms.
In one bedroom police discovered the bodies of Burgess's girlfriend, Shelia, and her 14-year-old daughter Latoria. In the other bedroom police discovered the body of 8-year-old Alexis and her 2-year-old brother, LaRico. LaRico was still breathing and was rushed to a local hospital. He recovered.
The coroner testified that the cause of Shelia's death was blunt-force injuries, strangulation, and suffocation; the cause of Latoria's death was cranial trauma and strangulation; and the cause of Alexis's death was cranial trauma. The coroner further testified that all three victims had extensive injuries to their heads and that all of the injuries were similar; they had been made by the same weapon. The apparent murder weapon was a bumper-jack assembly post.

Standard of Review
Burgess appeals the denial of his postconviction petition. According to Rule 32.3, Ala.R.Crim.P., the petitioner has the burden of proving his claims by a preponderance of the evidence.
When reviewing a circuit court's ruling on a postconviction petition we use an abuse-of-discretion standard. See Elliott v. State, 601 So.2d 1118, 1119 (Ala. Crim.App.1992). However, "[W]hen the facts are undisputed and an appellate court is presented with pure questions of law, that court's review in a Rule 32 proceeding is de novo." Ex parte White, 792 So.2d 1097, 1098 (Ala.2001). We can affirm a circuit court's ruling if it is correct for any reason, even if not the reasons stated in the circuit court's order. See Reed v. State, 748 So.2d 231, 233 (Ala. Crim.App.1999).
Moreover,
"`"[T]he plain error rule does not apply to Rule 32 proceedings, even if the case involves the death sentence." Thompson v. State, 615 So.2d 129 (Ala.Crim.App.1992).' Cade v. State, 629 So.2d 38, 41 (Ala.Crim.App.1993), cert. denied, [511] U.S. [1046], 114 S.Ct. 1579, 128 L.Ed.2d 221 (1994).
"In addition, `[t]he procedural bars of Rule 32 apply with equal force to all cases, including those in which the death penalty has been imposed.' State v. Tarver, 629 So.2d 14, 19 (Ala.Crim.App. 1993)."
Brownlee v. State, 666 So.2d 91, 93 (Ala. Crim.App.1995).

I.
Many of the claims Burgess raises on this appeal relate to assertions in his Rule 32 petition that he was deprived of the effective assistance of counsel at his capital-murder trial and at sentencing.[2] When reviewing claims of ineffective assistance of counsel we apply the two-pronged standard announced by the United States Supreme Court in Strickland v. Washington, *278 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order for the petitioner to prove that he has been deprived of the effective assistance of counsel the petitioner must show (1) that counsel's performance was deficient and (2) that he was prejudiced by the deficient performance. As the United States Supreme Court stated in Strickland v. Washington:
"Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.' There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way."
466 U.S. at 689, 104 S.Ct. 2052 (citations omitted). The court further explained:
"[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."
466 U.S. at 690-91, 104 S.Ct. 2052.
"Furthermore, to render effective assistance, an attorney is not required to raise every conceivable constitutional claim available at trial and on appeal. Holladay v. State, 629 So.2d 673 (Ala.Cr. App.1992), cert. denied, 510 U.S. 1171, 114 S.Ct. 1208, 127 L.Ed.2d 555 (1994); McCoy v. Lynaugh, 874 F.2d 954, 965-66 (5th Cir.1989). Rather, counsel must be given some discretion in determining which claims possibly have merit, and thus a better chance of success, and which claims do not have merit, and thus have little chance of success. Heath v. State, 536 So.2d 142 (Ala.Cr.App.1988); Smith v. Murray, 477 U.S. 527, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986); Engle v. Isaac, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982)."
Davis v. State, 720 So.2d 1006, 1014 (Ala. Crim.App.1998). "[C]onviction of a client does not prove the lack of skill or zeal on the part of counsel." Taylor v. State, 291 Ala. 756, 760, 287 So.2d 901, 906 (1973).
At trial Burgess was represented by attorneys John Benn and Cliff Wright. Neither attorney was called to testify at the Rule 32 proceedings. The record indicates that Benn executed an affidavit concerning the case. The affidavit contains the following remarks:
"On May 8, 2001, I had scheduled a meeting at 1:00 p.m. with Deputy Attorney *279 General Jon Hayden to discuss the ineffective assistance of counsel claims contained in Burgess's petition. Prior to our meeting, I had informed Mr. Hayden that I would need some specific authority that the attorney-client privilege was waived concerning these proceedings. Mr. Hayden assured me that the privilege was waived regarding allegations of ineffectiveness contained in the petition.
"Approximately one hour before our scheduled meeting, Burgess's Rule 32 counsel, Cathleen Price, contacted me. Ms. Price stated that she wanted me to understand that Burgess had not waived his attorney-client privilege regarding my representation. Ms. Price further indicated that I was permitted to talk to her or Burgess concerning any confidential communications but that I was not to disclose any such communications to Mr. Hayden.
"Based on Ms. Price's representation to me that Burgess had not waived his attorney-client privilege, I informed Mr. Hayden that I would not discuss any allegations of ineffective assistance of counsel where confidential communications were involved unless I was provided with a court order informing me I could do so. Mr. Hayden and I discussed other issues in the petition and our meeting concluded at approximately 2:00 p.m."
(C.R. 201-02.)
After Rule 32 counsel informed trial counsel that Burgess refused to waive his attorney-client privilege the State's attorney moved that the ineffective-assistance-of-counsel claims be dismissed because trial counsel refused to discuss the issues with the State's attorney and the State's ability to defend the claims was seriously hampered. The State cited this Court's decision in State v. Click, 768 So.2d 417 (Ala.Crim.App.1999). In Click, we stated:
"A postconviction petitioner who raises a Sixth Amendment claim of ineffective assistance of counsel `waives the attorney-client privilege as to matters reasonably related to the claim of inadequate representation.' United States v. Mansfield, 33 M.J. 972, 984 (A.F.C.M.R. 1991), review granted, 37 M.J. 246 (C.M.A.), aff'd, 38 M.J. 415 (C.M.A. 1993), cert. denied, 511 U.S. 1052, 114 S.Ct. 1610, 128 L.Ed.2d 338 (1994). McElroy's Alabama Evidence states:
"`If the client charges the attorney with misconduct, the privilege is lifted insofar as is necessary to enable the attorney to combat the charge. This would necessarily mean that the client could not base a lawsuit against the attorney upon the negligence of the attorney's advice and then object when the attorney attempts to testify as to the attorney's own version of what was said. This would open the door, of course, to only so much of the privileged matter that is relevant and necessary to the attorney's defense.'
"Charles W. Gamble, McElroy's Alabama Evidence, § 394.01(3) (5th ed.1996). See also Rule 502(d)(3), Ala. R.Evid., which provides that there is no attorney-client privilege `[a]s to a communication relevant to an issue of breach of duty by an attorney to the client or by a client to the client's attorney.'"
768 So.2d at 421-22. Burgess's Rule 32 counsel then filed a response to the State's motion. The response stated: "Mr. Burgess does not invoke attorney-client privilege with respect to communications that are relevant to his claims of ineffective assistance of counsel that have been asserted in the petition." (C.R. 207.)
*280 No other affidavits or statements by either of Burgess's trial attorneys are contained in the record, even though the record shows that counsel was available. As this Court stated in Brooks v. State, 929 So.2d 491, 497 (Ala.Crim.App.2005), quoting Grayson v. Thompson, 257 F.3d 1194, 1218 (11th Cir.2001):
"`[W]e note that the record is silent as to why trial counsel did not pursue a motion to suppress the evidence obtained from Grayson incident to his arrest on Fourth Amendment grounds; Grayson's habeas counsel did not inquire as to trial counsel's reasons for not raising such a claim either during counsel's deposition or his testimony at the state habeas hearing. "An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption [of effective representation]. Therefore, `where the record is incomplete or unclear about [counsel]'s actions, we will presume that he did what he should have done, and that he exercised reasonable professional judgment.'" Chandler v. United States, 218 F.3d 1305, 1314 n. 15 (11th Cir.2000) (en banc) (quoting Williams v. Head, 185 F.3d 1223, 1228 (11th Cir.1999)).'"
See also Grossman v. Crosby, 359 F.Supp.2d 1233, 1252 (M.D.Fla.2005); Thompson v. State, 9 S.W.3d 808, 813-14 (Tex.Crim.App.1999).

A.
Burgess first argues that Alabama's statutory scheme for compensating attorneys appointed to represent indigent defendants insures counsel's ineffective performance.[3]
The circuit court held that this claim was procedurally barred because it was raised and addressed on direct appeal. In this Court's opinion on direct appeal we stated:
"Burgess argues that the trial court erred when it denied defense counsel's motions for adequate compensation and that the limitations placed by § 15-12-21(d), Ala.Code 1975, on compensation of counsel representing indigent defendants are unconstitutional. He also contends that those limitations deprive indigent defendants of the effective assistance of counsel. These same arguments have been rejected previously by the appellate courts of this state. See Ex parte Brown, 686 So.2d 409, 422 n. 6 (Ala.1996), cert. denied, 520 U.S. 1199, 117 S.Ct. 1558, 137 L.Ed.2d 705 (1997); Price v. State, 725 So.2d 1003 (Ala.Cr. App.1997); Smith v. State, 698 So.2d 189 (Ala.Cr.App.1996), aff'd, 698 So.2d 219 (Ala.1997); May v. State, 672 So.2d 1307 (Ala.Cr.App.1993), writ quashed, 672 So.2d 1310 (Ala.1995)."
723 So.2d at 763-64.
The circuit court correctly found that this claim had been addressed on direct appeal and that it was thus procedurally barred in this Rule 32 petition. See Rule 32.2(a)(4), Ala.R.Crim.P.

B.
Burgess next argues that trial counsel was ineffective for permitting the State to introduce evidence of Burgess's prior acts of abuse toward Shelia Nnodimele.
The circuit court held that this claim was procedurally barred because it was raised for the first time in the amended *281 petition and the amended petition was not filed until after the statute of limitations had expired. The circuit court stated:
"None of these allegations were included in Burgess's original timely filed Rule 32 petition. Burgess filed his amended petition on or about February 19, 2002, almost 16 months beyond the two-year limitations period found in Rule 32.2(c), A.R.Cr.P.; therefore, the Court finds that the allegations contained in part II.A.II(J), of Burgess's amended petition are procedurally barred. See Charest v. State, [854 So.2d 1102 (Ala.Crim.App. 2002)] (holding that novel claims presented in an amended petition filed outside the two-year limitations period that do not relate back to a claim in the original petition were not properly before the circuit court)."
(Second supplemental record, p. 19.)
The circuit court erred in holding that this claim was procedurally barred. The Alabama Supreme Court recently in Ex parte Jenkins, [Ms. 1031313, April 8, 2005] ___ So.2d ___ (Ala.2005), overruled this Court's decision in Charest and stated:
"Given the direction in the Alabama Rules of Criminal Procedure that amendments to Rule 32 petitions are to be allowed at any time before the trial court enters a judgment, Rule 32.7(b), and that leave to amend is to be freely granted, Rule 32.7(d), we conclude that a restriction on a Rule 32 petitioner's right to file an amendment by applying principles found in the Alabama Rules of Civil Procedure, such as the relation-back doctrine, should be the subject of careful consideration by the Standing Committee on the Alabama Rules of Criminal Procedure. We decline to re-write the Rules of Criminal Procedure by sanctioning the incorporation of the relation-back doctrine into those rules when nothing of that nature presently appears in them.
"To the extent that the following cases applied the relation-back doctrine to proceedings governed by Rule 32, Ala. R.Crim.P., we overrule those cases: Harris v. State, 947 So.2d 1079 (Ala. Crim.App.2004); McWilliams v. State, 897 So.2d 437 (Ala.Crim.App.2004); Giles v. State, 906 So.2d 963 (Ala.Crim. App.2004); Ex parte Mack, 894 So.2d 764 (Ala.Crim.App.2003); DeBruce v. State, 890 So.2d 1068 (Ala.Crim.App. 2003); Charest v. State, 854 So.2d 1102 (Ala.Crim.App.2002); and Garrett v. State, 644 So.2d 977 (Ala.Crim.App. 1994)."
___ So.2d at ___ (footnote omitted). However, this Court may affirm a ruling on a Rule 32 petition if it is correct for any reason. See Reed, supra.

1.
Burgess first argues that evidence of Burgess's abusive relationship with Shelia was inadmissible because, he argues, it permitted jurors to infer Burgess's guilt based on his prior conduct toward Shelia.
We have examined the record that was filed with this Court on direct appeal.[4] The record shows that several friends of the victims testified that Burgess and Shelia had an abusive relationship and that they had seen Burgess strike Shelia on occasion.[5]
"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in *282 conformity therewith." Rule 404(b), Ala. R.Evid. However, Alabama has recognized several exceptions to this general exclusionary rule. Prior bad acts may be admissible to show motive or intent to commit the charged offense. See Rule 404(b), Ala.R.Evid. We have held:
"`"In a prosecution for murder, evidence of former acts of hostility between the accused and the victim are admissible as tending to show malice, intent, and ill will on the part of the accused." White v. State, 587 So.2d 1218, 1230 (Ala.Cr.App.1990), affirmed, 587 So.2d 1236 (Ala.1991), cert. denied, 502 U.S. 1076, 112 S.Ct. 979, 117 L.Ed.2d 142 (1992).' Childers v. State, 607 So.2d 350, 352 (Ala.Cr.App.1992). `Acts of hostility, cruelty and abuse by the accused toward his homicide victim may be proved by the State for the purpose of showing motive and intent. . . . This is "another of the primary exceptions to the general rule excluding evidence of other crimes."' Phelps v. State, 435 So.2d 158, 163 (Ala.Cr.App.1983). See also Baker v. State, 441 So.2d 1061, 1062 (Ala.Cr.App.1983)."
Hunt v. State, 659 So.2d 933, 939 (Ala. Crim.App.1994). See Harris v. State, 489 So.2d 688 (Ala.Crim.App.1986) (prior acts of abuse toward child victim were admissible to show motive and intent to murder). See also Harvey v. State, 579 So.2d 22, 26 (Ala.Crim.App.1990). "Former acts of hostility or cruelty by the accused upon the victim are very commonly the basis for the prosecution's proof that the accused had a motive to commit the charged homicide." 1 Charles W. Gamble, McElroy's Alabama Evidence § 45.01(8) (5th ed.1996) (footnote omitted), and cases cited therein.
Other states have also recognized this evidentiary principle. The New Jersey Superior Court in State v. Engel, 249 N.J.Super. 336, 374-75, 592 A.2d 572, 590 (App.Div.1991), stated:
"We are convinced that evidence of [the defendant's] prior acts of violence and threats against [the victim] was highly relevant with respect to the issue of motive and that its probative value far outweighed its potential for undue prejudice. We note that evidence of arguments or violence between a defendant and a homicide victim has long been admitted. See, e.g., State v. Ramseur, 106 N.J. [123] at 267, 524 A.2d 188 [(1987)]; State v. Mulero, 51 N.J. 224, 228-229, 238 A.2d 682 (1968); State v. Lederman, 112 N.J.L. 366, 372, 170 A. 652 (E. & A.1934); State v. Schuyler, 75 N.J.L. 487, 488, 68 A. 56 (E. & A.1907); State v. Donohue, 2 N.J. 381, 388, 67 A.2d 152 (1949); State v. Slobodian, 120 N.J.Super. 68, 75, 293 A.2d 399 (App. Div.1972), certif. den. 62 N.J. 77, 299 A.2d 75 (1972). The trial court's admission of this evidence was thus in accord with settled case law."
Addressing a similar issue, the Tennessee Court of Criminal Appeals stated:
"[T]here is evidence that the defendant was persistent in abusing and harassing the victim from the time they were separated until the crime was committed. . . . The relations existing between the [murder] victim and the defendant prior to the commission of the crime are relevant. These relations indicate hostility toward the victim and a settled purpose to harm or injure her. See Ingram v. State, 1 Tenn.Cr.App. 383, 443 S.W.2d 528 (1969); Burnett v. State, 82 Tenn. (14 LEA) 439 (Tenn.1884)."
State v. Glebock, 616 S.W.2d 897, 905-06 (Tenn.Crim.App.1981).[6]
*283 Based on well-established caselaw, Burgess's prior acts of violence toward the victim were admissible under the motive and intent exceptions to the exclusionary rule.

2.
Burgess also argues in regards to this issue that counsel was ineffective for failing to obtain a limiting instruction on the use of the prior-bad-act evidence. Burgess cites the Alabama Supreme Court's decision in Ex parte Minor, 780 So.2d 796 (Ala.2000), in support of his contention that Burgess was prejudiced by the failure of the trial court to give a limiting instruction.
The Alabama Supreme Court in Minor held that it was plain error for a trial court to fail to sua sponte instruct a jury on the use of evidence of prior convictions when those convictions or the actions that were the basis of the convictions were introduced for the purpose of impeaching the defendant. The Alabama Supreme Court in Minor stated:
"[T]his Court has acknowledged the inherently prejudicial nature of evidence of a defendant's prior convictions. Cofer v. State, 440 So.2d 1121, 1124 (Ala.1983) (`[e]vidence of prior bad acts of a criminal defendant is presumptively prejudicial to the defendant'). `The general exclusionary rule bars the state from introducing evidence of an accused's prior criminal acts for the sole purpose of proving the propensity of the accused to commit the charged offense.' Hobbs v. State, 669 So.2d 1030, 1032 (Ala.Crim. App.1995). Thus, evidence of prior convictions is admissible only for limited purposes. `The basis for the rule lies in the belief that the prejudicial effect of prior crimes will far outweigh any probative value that might be gained from them. Most agree that such evidence of prior crimes has almost an irreversible impact upon the minds of the jurors.' Cofer, 440 So.2d at 1123 (quoting Charles W. Gamble, McElroy's Alabama Evidence § 69.01 (3d ed.1977)). The general exclusionary rule `protects the defendant's right to a fair trial' by seeking `"to prevent conviction based on a jury belief that [the] accused is a person of bad character. The jury's determination of guilt or innocence should be based on evidence relevant to the crime charged.'" Cofer, 440 So.2d at 1123 (citation omitted). Thus, it naturally follows that the trial court should take all necessary precautions to ensure that when evidence of a defendant's prior convictions is admitted into evidence, the jury is properly instructed on the purpose for which it may consider that evidence. This includes instructing the jury, sua sponte, that it may not consider the evidence of prior convictions as substantive evidence that the defendant committed the charged offense.
"Our holding today is in line with that of other jurisdictions that have addressed this issue. In State v. Brown, *284 296 S.C. 191, 192-93, 371 S.E.2d 523, 524 (Sup.Ct.1988), the Supreme Court of South Carolina stated: `This Court has repeatedly held the jury must be charged that evidence of prior convictions is admissible only for impeachment. In a capital case, failure to give this charge is error even absent a request.' The Court of Criminal Appeals attempted to distinguish Brown on the basis that the defendant in Brown was told by the trial court before he testified that he would receive a limiting instruction and thus in testifying relied on what he had been told, whereas Minor was never told, before testifying, that the jury would be given a limiting instruction. We do not find this to be a valid distinction. Minor was entitled to have the jury instructed on the proper use of evidence regarding his prior convictions, regardless of whether the trial court informed him of that entitlement before he testified."
780 So.2d at 802.
Relying on the Supreme Court's decision in Minor, we reversed the conviction in Snyder v. State, 893 So.2d 471 (Ala.Crim. App.2001), because the trial court failed to sua sponte instruct the jury on the use of the prior convictions when those convictions were introduced for the purpose of impeaching the defendant. The Supreme Court reversed this Court's judgment in Snyder and narrowed its earlier holding in Minor. The Supreme Court stated:
"This Court, in finding that plain error had occurred in Ex parte Minor, recognized that Minor's testimony was extremely damaging, that the need for an instruction limiting the use of the evidence was obvious, and that the failure to give the instruction was so prejudicial that it affected Minor's substantial rights. While the Court found plain error in the trial court's failure to instruct the jury on the purpose of the evidence of Minor's prior conviction, the Court's holding in that regard did not establish a per se rule. See United States v. Waldrip, 981 F.2d 799 (5th Cir.1993)(clarifying United States v. Diaz, 585 F.2d 116 (5th Cir.1978), and holding that whether a failure to instruct on the limited use of prior-conviction evidence was error was to be determined on a case-by-case basis). Thus, each inquiry regarding the propriety of an instruction on the use of evidence of prior convictions presented for impeachment purposes must be determined on a case-by-case basis."
Snyder v. State, 893 So.2d 482, 485 (Ala. 2001). The Supreme Court found that under the circumstances presented in that case the Court's failure to give the jury a limiting instruction was harmless beyond a reasonable doubt. The Supreme Court cited and relied on United States v. Waldrip, 981 F.2d 799 (5th Cir.1993), to support its decision.
In Waldrip, the defendant was charged with defrauding two banks and with making false statements to influence a financial institution. The government introduced a letter the defendant had fraudulently signed using an accountant's name and evidence that the defendant had previously committed "bank robbery." The court found that the prior bad acts were admissible to impeach Waldrip. The United States Court of Appeals for the Fifth Circuit, in determining whether the trial court erred in failing sua sponte to give a limiting instruction on the use of the prior bad acts, stated:
"When the particular facts of this case are examined, we find that unlike [United States v.] Diaz, [585 F.2d 116 (5th Cir.1978),] the trial court did not commit plain error. In view of the other evidence against Waldrip, the evidence of *285 her previous acts of forgery and bank robbery was not extremely damaging. The government clearly established all the elements of the charged offenses. In addition, the need for a limiting instruction was not obvious. Counsel may refrain from requesting an instruction in order not to emphasize potentially damaging evidence, and for other strategic reasons. [United States v.] Barnes, 586 F.2d [1052] at 1059 [(5th Cir.1978)]. Finally, although we cannot fairly say that the evidence of prior conduct was not damaging, it was not so damaging as to require us to reverse on the basis of plain error.
"Although the district court should have cautioned the jury to consider the extrinsic act evidence only as it related to Waldrip's character for truthfulness, it did warn the jury
"`The defendant is not on trial for any act, conduct or offense not alleged in the superseding indictment.'
"Record Vol. 11 at 23. We are therefore unable to conclude that the district court's jury instructions were so deficient that they significantly prejudiced Waldrip's rights."
981 F.2d at 805-06.
This case is factually indistinguishable from Waldrip. Here, the evidence against Burgess was overwhelming. Also, the circuit court gave the jury the following instruction:
"The accused is not on trial for any act, or conduct, not alleged in the indictment. Regardless of your personal views, as jurors, you are not to concern yourselves with the lawfulness, or the unlawfulness of any prior incidents of behavior between the Defendant and any victim in this case."
(Record on appeal p. 2803.) Based on the Supreme Court's decision in Snyder, under the circumstances here the circuit court's failure sua sponte to instruct the jury on the use of the prior bad acts would not have prejudiced Burgess's substantial rights. See Rule 45A, Ala.R.App.P.
More importantly, in the context of a Rule 32 proceeding and defending a claim of ineffective assistance of counsel, counsel may make a strategic decision to not call attention to prior bad act evidence by not requesting a limiting instruction on the use of those acts. Though we have never addressed this specific issue, many other jurisdictions have found that an attorney's decision not to request a limiting instruction was a strategic choice that was not subject to attack in a Rule 32 petition. As the Ohio Court of Appeals stated in State v. Jones, (No. 20349, March 18, 2005) (Ohio Ct.App.2005) (unpublished):
"Jones argues that trial counsel was ineffective because he failed to ask for an other-acts limiting instruction regarding his prior criminal record. Counsel's decision not to request a limiting instruction may have been a strategic decision in order to avoid drawing further attention to Jones' criminal history. Trial strategy decisions will not be the basis of a finding of ineffective assistance. . . . Moreover, even if counsel should have requested a limiting instruction, Jones must still demonstrate that he was prejudiced by counsel's failure in order to prevail upon an ineffective assistance of counsel claim. . . . [W]e conclude that it is unlikely that a lack of a limiting instruction caused the jury's finding of guilt. In other words, we conclude that it is unlikely that Jones would have been acquitted if the instruction had been given."
In addressing this same issue the Supreme Court of California in People v. Hernandez, 33 Cal.4th 1040, 94 P.3d 1080, 16 Cal.Rptr.3d 880 (2004), stated:

*286 "Defendants contend counsel were ineffective in not requesting a limiting instruction. `To establish ineffective assistance, defendant bears the burden of showing, first, that counsel's performance was deficient, falling below an objective standard of reasonableness under prevailing professional norms. Second, a defendant must establish that, absent counsel's error, it is reasonably probable that the verdict would have been more favorable to him.' (People v. Hawkins (1995) 10 Cal.4th 920, 940, 42 Cal. Rptr.2d 636, 897 P.2d 574.). . . . On this record, we cannot say that counsel were deficient for not requesting a limiting instruction. `A reasonable attorney may have tactically concluded that the risk of a limiting instruction . . . outweighed the questionable benefits such instruction would provide.' (People v. Maury (2003) 30 Cal.4th 342, 394, 133 Cal. Rptr.2d 561, 68 P.3d 1; see also Hawkins, supra, at p. 942, 42 Cal.Rptr.2d 636, 897 P.2d 574.)"
Hernandez, 33 Cal.4th at 1052-53, 94 P.3d at 1088, 16 Cal.Rptr.3d at 889-90. See also Buehl v. Vaughn, 166 F.3d 163, 170 (3d Cir.1999) ("In some circumstances, such an instruction may be strongly advisable; in others, counsel may reasonably conclude that it is strategically preferable to omit such a request since the instruction might have the undesired effect of highlighting the other crimes evidence."); Commonwealth v. Delong, 60 Mass.App. Ct. 122, 132, 799 N.E.2d 1267, 1277 (2003) ("We hold that it was a reasonable tactical decision not to request a limiting instruction, as such instructions typically highlight the permissible uses of evidence, as well as the limitations."); Hudson v. State, 277 Ga. 581, 585, 591 S.E.2d 807, 811 (2004) ("Hudson did not question his trial counsel regarding the reasons why counsel chose not to move for limiting instructions regarding the jury's consideration of a certified copy of Hudson's prior felony conviction. `In the absence of contrary evidence, defense counsel's actions are presumed to be part of trial strategy.'" (quoting Thomas v. State, 268 Ga. 135, 139-40, 485 S.E.2d 783, 790 (1997))).
Though the circuit court erred in finding that this issue was procedurally barred because it was not raised in a timely filed petition, we may affirm a circuit court's ruling if it is correct for any reason. Reed, supra. Here, Burgess failed to meet either prong of the Strickland test; thus, he is not entitled to relief on this claim.

C.
Burgess next argues that his trial counsel was ineffective for not investigating potential mitigating evidence to present at the penalty phase of his trial.
As the United States Court of Appeals for the Eleventh Circuit stated in Clark v. Dugger, 834 F.2d 1561, 1568 (11th Cir.1987):
"The failure to conduct a reasonable investigation of possible mitigating evidence may render counsel's assistance ineffective. Lightbourne v. Dugger, 829 F.2d 1012, 1025 (11th Cir.1987); Thompson v. Wainwright, 787 F.2d 1447, 1450 (11th Cir.1986), cert. denied, [481] U.S. [1042], 107 S.Ct. 1986, 95 L.Ed.2d 825 (1987). `After a sufficient investigation, however, "counsel may make a reasonable strategic judgment to present less than all possible available evidence in mitigation."' Lightbourne, 829 F.2d at 1025 (quoting Mitchell v. Kemp, 762 F.2d 886, 889 (11th Cir.1985), cert. denied, [483] U.S. [1026], 107 S.Ct. 3248, 97 L.Ed.2d 774 (1987) and Stanley v. Zant, 697 F.2d 955, 965 (11th Cir.1983), cert. denied, sub nom. 467 U.S. 1219, 104 S.Ct. 2667, 81 L.Ed.2d 372 (1984)). In essence, `[c]ounsel has no absolute *287 duty to present mitigating character evidence.' Id. (quoting Mitchell, 762 F.2d at 889). Schaeffer conducted a reasonable investigation to determine the availability of appropriate mitigating evidence and simply made a tactical decision to not present some of the available mitigating evidence. In this circuit, Schaeffer's decision is `accorded a strong presumption of correctness which is "virtually unchallengeable.'" Id. (quoting Sinclair v. Wainwright, 814 F.2d 1516, 1519 (11th Cir.1987) and Strickland v. Washington, 466 U.S. 668, 690, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984))."
This Court has stated:
"While counsel has a duty to investigate in an attempt to locate evidence favorable to the defendant, `this duty only requires a reasonable investigation.' Singleton v. Thigpen, 847 F.2d 668, 669 (11th Cir.(Ala.) 1988), cert. denied, 488 U.S. 1019, 109 S.Ct. 822, 102 L.Ed.2d 812 (1989) (emphasis added). See Strickland, 466 U.S. at 691, 104 S.Ct. at 2066; Morrison v. State, 551 So.2d 435 (Ala.Cr.App.1989), cert. denied, 495 U.S. 911, 110 S.Ct. 1938, 109 L.Ed.2d 301 (1990). Counsel's obligation is to conduct a `substantial investigation into each of the plausible lines of defense.' Strickland, 466 U.S. at 681, 104 S.Ct. at 2061 (emphasis added). `A substantial investigation is just what the term implies; it does not demand that counsel discover every shred of evidence but that a reasonable inquiry into all plausible defenses be made.' Id., 466 U.S. at 686, 104 S.Ct. at 2063.
"`The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information.'
"Id., 466 U.S. at 691, 104 S.Ct. at 2066."
Jones v. State, 753 So.2d 1174, 1191 (Ala. Crim.App.1999).
The circuit court made the following findings when denying relief on this claim:
"Burgess called three witnesses to testify at the evidentiary hearing.
"Debbie Southward testified on direct examination that she had known Burgess from the time he was a child until he was a teenager. Southward described Burgess as a `typical kid' that respected her and `never gave [her] any problem.' Southward described an incident when Burgess was seven or eight years old where he helped her daughter out of a sewer she had fallen into. On cross-examination, Southward indicated that she was unaware that Burgess had been convicted of kidnapping in Mississippi prior to being convicted of capital murder in Alabama.
"Johnny Southward, Debbie's son, testified that Burgess and he had been childhood friends because their grandmothers lived close together. Johnny Southward stated that he and Burgess rode bicycles, played ball, and did `[j]ust boyish things[.]' Johnny testified that Burgess would help him when he would have epileptic seizures. Johnny said Burgess was a good person at the time he knew him, but indicated that he had not had any close contact with Burgess after he turned 13 years old and Burgess turned 11 years old. On cross-examination, Johnny indicated that he was not aware that Burgess had been convicted of, and served penitentiary time for, kidnapping in Mississippi and that *288 Burgess is not the same person today that he grew up with as a child.
"Melissa Bennett testified that she had grown up with Burgess and known him all his life. Bennett testified that she and Burgess played together as children and that he went on vacations with her family. Bennett indicated that Burgess went to church with her family, and described him as `funny' and `compassionate.' Bennett testified that Burgess helped older people rake and mow their lawns and once kept her from being hurt in a fight. Bennett described Burgess's mother as `a nice lady' that `had a mental problem.' Bennett testified that Burgess's mother would sometimes talk to people that were not there and wear clothespins and light bulbs on her ears. Bennett testified that Burgess was physically and verbally abused by his uncles and that neither his mother or grandmother protected him from the abuse. Bennett stated that she had seen Burgess take drugs, including alcohol and marijuana, and sniff paint thinner. Bennett said she hated what Burgess had done but that she loved him unconditionally `like a brother.' Bennett admitted on cross-examination that she had not had much contact with Burgess in the last 23 to 24 years.
"At the penalty phase of the Burgess trial, trial counsel called Dr. John H. Goff, a clinical neuropsychologist, to testify. Goff opined that Burgess came from an extremely dysfunctional family. Goff testified that his investigation revealed that Burgess was borderline mentally retarded, that he had been physically abused by his uncles as a child, that he began using alcohol at a young age and had used crack cocaine, and that his mother had been diagnosed paranoid schizophrenic. Goff stated that Burgess suffered from a cyclothymic disorder that caused him `substantial problems with fluctuating moods.' Goff indicated trial counsel had specifically requested that he investigate for evidence to establish mitigating circumstances.
"As this claim relates to the jury's recommended sentence, the Court finds that it is without merit. The Court finds the testimony of Dr. Goff far more compelling and credible than the testimony of Debbie and John Southward and Melissa Bennett. Neither of the witnesses called to testify at the evidentiary hearing had seen Burgess for many years, were unfamiliar with his criminal record as an adult, and were obviously biased for Burgess based on their prior relationships with him. Dr. Goff, on the other hand, presented a detailed synopsis of the effects that Burgess's family life and drug use had on his life. Further, the Court finds that much of the testimony elicited at the Rule 32 hearing regarding the physical/mental abuse suffered by Burgess, his drug and alcohol abuse, and his family's history of mental illness was cumulative to the testimony provided at trial by Dr. Goff.
"Moreover, the Court finds this claim to be without merit because the jury voted eight to four that Burgess be sentenced to life imprisonment without parole. See, Burgess, 723 So.2d at 755-56 (holding that any alleged error in comments made by the prosecutor during the penalty-phase `would have been harmless because the jury recommended that Burgess be sentenced to life imprisonment without parole.'); see also Boyd v. State, 746 So.2d 364, 379 (Ala.Crim. App.1999) (holding trial counsel's penalty-phase strategy was successful where the jury recommended the petitioner be sentenced to life without parole).

*289 "As this claim relates to the trial court sentencing Burgess to death, the Court finds that Burgess has failed to meet his burden proving that trial counsel's performance was deficient or caused him prejudice as required by Strickland [v. Washington, 466 U.S. 668 (1994)]."
(Second supplemental record, p. 12-14.)
The record shows that Burgess originally entered a plea of not guilty by reason of mental disease or defect. That plea was subsequently withdrawn. After the original plea was entered counsel moved that Burgess be evaluated by a mental-health professional. Counsel also moved to be provided funds for an expert psychiatrist  that motion was granted. (Record on appeal, C.R. 117.) Counsel also moved to be provided funds for an investigator  that motion was granted. (Record on appeal, C.R. 119.) The record also shows that Burgess was examined by at least three mental-health experts before his trial. However, Burgess's attorneys were not called to testify. The only evidence to support this claim was the testimony of the three witnesses who were called at the evidentiary hearing.
"[A]ppellant contends that his counsel failed to fully investigate possible mitigating factors. He argues that counsel should have called an expert witness on `cultural diversity,' but he does not explain what such a witness could have said on his behalf. He also argues that counsel should have called an expert witness on fetal alcohol syndrome and should have obtained a neuropsychological assessment to investigate possible organic brain impairment. However, the record does not show that defense counsel failed to investigate these possibilities. Contrary to appellant's suggestion, we cannot infer failure to investigate from a silent record; the burden of demonstrating ineffective assistance is on him."
State v. Murphy, 91 Ohio St.3d 516, 542, 747 N.E.2d 765, 797 (2001). "Although trial counsel clearly has a duty to adequately investigate possible defenses to enable formulation of an informed trial strategy . . ., we will not presume from a silent record that counsel failed in this duty." People v. Jennings, 53 Cal.3d 334, 375, 807 P.2d 1009, 1035, 279 Cal.Rptr. 780, 806 (1991).
Also, a review of the postconviction record shows that the State made the following argument in its response to Burgess's amended petition:
"Trial counsel will testify that Dr. Alan Shealy, a certified forensic psychologist evaluated Burgess for the defense and informed counsel that Burgess did not suffer from a mental disease or defect to the degree that it would support an insanity defense. Shealy's opinion was consistent with the opinion of Dr. Lawrence Maier, a forensic psychologist that evaluated Burgess for the State.
"Because trial counsel's decision to withdraw Burgess's plea of not guilty by reason of mental disease or defect was based upon the opinion of two mental health experts including his own, it was reasonable. . . .
"Counsel alleges that trial counsel failed to adequately present evidence that Burgess: 1) suffered from a mental illness; 2) was physically abused as a child; 3) abused drugs and alcohol as a child; and 4) had a family history of serious mental illness. Counsel also alleges that trial counsel failed to adequately secure and present his institutional and medical records or prepare mitigation experts to testify.
"If necessary to rebut this claim the State will present the testimony of Burgess trial counsel, who would testify that *290 Shealy's oral report indicated that Burgess was malingering, manipulative, and did not suffer from a severe mental disease or defect. Trial counsel did not call Shealy to testify during the penalty-phase because they feared such unfavorable evidence might be admitted during the cross-examination. . . .
"The record indicates that none of the three mental health experts that evaluated Burgess opined that he suffered from serious mental disease or defect."
(C.R. 288-89.) These assertions by the State are not refuted in the record.
We have thoroughly reviewed the record of the direct appeal. Clearly, this is not a case where Burgess's trial attorneys failed to investigate. The record shows that they conducted a diligent investigation. Also, evidence was introduced at the penalty phase in support of mitigation. Burgess has failed to meet his burden in regard to this claim, and relief was correctly denied.
As part of this claim Burgess argues that he was denied a fair Rule 32 hearing because his motion for funds for expert assistance was denied. Specifically, he contends that the United States Supreme Court's holding in Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), entitles him to funds to secure a mental-health expert to help with his postconviction litigation.
In Williams v. State, 783 So.2d 108 (Ala. Crim.App.2000), this Court cited Alabama's long-established rule that Ake does not extend to Rule 32 proceedings. We stated:
"[T]he appellant contends that the circuit court erroneously denied his motions for funds to hire a psychologist, a forensic pathologist, and a forensic expert. Citing Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), he argues that the State is required to provide indigent defendant with experts to assist in preparing postconviction litigation and that to deny these experts results in the denial of due process. However, this court has held that indigent defendants are not entitled to funds to hire experts to assist in postconviction litigation. See Ford v. State, 630 So.2d 111 (Ala.Crim.App.1991), aff'd, 630 So.2d 113 (Ala.1993), cert. denied, 511 U.S. 1078, 114 S.Ct. 1664, 128 L.Ed.2d 380 (1994); Holladay v. State, 629 So.2d 673 (Ala.Crim.App.1992), cert. denied, 510 U.S. 1171, 114 S.Ct. 1208, 127 L.Ed.2d 555 (1994); Hubbard v. State, 584 So.2d 895, 900-01 (Ala.Crim.App.1991), cert. denied, 502 U.S. 1041, 112 S.Ct. 896, 116 L.Ed.2d 798 (1992)."
783 So.2d at 113.
We are aware that the decisions cited above were released before the United States Supreme Court announced its decision in Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), and that since Atkins there may be instances when a mental-health expert is necessary in a postconviction proceeding challenging a death sentence. However, this is not such a case.
When discussing this issue before the Rule 32 evidentiary hearing, the following occurred:
"The Court: Now, at any time during the whole proceedings, has he had psychiatric evaluations?
"[Assistant attorney general]: Three.
"The Court: Three times. That's what I thought. I thought he had had it. But I didn't realize it was three times.
"[Assistant attorney general]: He was evaluated by Dr. Maier for the State; he was evaluated by Dr. Allen Shealy and Dr. John Goff for the defense.

*291 "The Court: Two for the defense. One for the State.
"[Assistant attorney general]: One for the State. None of the doctors indicated that he suffered a mental disease or defect. Dr. Goff testified during the penalty phase a large portion of Dr.  "The Court: Dr. Goff was for the State or for the defense?
"[Assistant attorney general]: No, sir. He was for the defense. Dr. Goff testified to his findings and also read into the record findings of Dr. Maier and also a lot of the findings of Dr. Shealy, who Shealy and Goff are for the defense.
"It is the State's position this man has been evaluated three times by three mental health professionals with very high credentials."
(R. 76-7.)
In Woodward v. Epps, 380 F.Supp.2d 788 (S.D.Miss.2005), a federal court considered the validity of a lower court's ruling denying a request for expert assistance related to a petition for a writ of habeas corpus. In holding that the habeas corpus petitioner had failed to show that a psychiatrist was necessary when he had been previously evaluated before his trial and the trial expert met the Ake standards, the Court stated:
"Woodward contends that the appointment of a psychiatrist is `reasonably necessary' to assist him in proving that he was denied his constitutional right to receive expert assistance regarding his mental state at the time of the commission of the crime for which he was convicted. In Ake v. Oklahoma, the United States Supreme Court held that `when a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination. . . .' Ake v. Oklahoma, 470 U.S. 68, 83, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). The Ake opinion, however, limited its holding by stating `[t]his is not to say, of course, that the indigent defendant has a constitutional right to choose a psychiatrist of his personal liking or to receive funds to hire his own.' Ake, 470 U.S. at 83, 105 S.Ct. 1087. `Our concern is that the indigent defendant have access to a competent psychiatrist for the purpose we have discussed, and . . . we leave to the State the decision on how to implement this right.' Id.

". . . .
"The Fourth Circuit Court of Appeals' case of Wilson v. Greene provides a persuasive analysis of the Ake requirements. In Wilson, the defendant, Kenneth Wilson filed a habeas corpus petition in which he contended that his court-appointed psychologist for his trial did not conduct an `appropriate' examination resulting in a violation of the Ake requirements. Wilson v. Greene, 155 F.3d 396, 400 (4th Cir.1998). In support of his contention, Wilson submitted to the district court a separate report from a different psychologist appointed by the district court to assist Wilson during his habeas proceedings. Wilson, 155 F.3d at 400. In said report, the psychologist contended that there was evidence to contradict the report submitted by Wilson's psychologist during the trial. Wilson argued in his habeas petition that the subsequent psychological evaluation proved that the testimony of his psychologist at trial was inadequate. Id. The Fourth Circuit disagreed with Wilson. The court reasoned that `[t]he Constitution does not entitle a criminal defendant to the effective assistance of an expert witness. To entertain such claims would immerse federal judges in *292 an endless battle of the experts to determine whether a particular psychiatric examination was appropriate.' Id. at 401 (citing Harris v. Vasquez, 949 F.2d 1497, 1518 (9th Cir.1990); Silagy v. Peters, 905 F.2d 986, 1013 (7th Cir.1990)). The Wilson court stated:
"`[t]his circuit consistently has "rejected the notion that there is either a procedural or constitutional rule of ineffective assistance of an expert witness, rather than ineffective assistance of counsel" . . . [i]t will nearly always be possible in cases involving the basic human emotions to find one expert witness who disagrees with another and to procure an affidavit to that effect from the second prospective witness. To inaugurate a constitutional or procedural rule of an ineffective expert witness in lieu of the constitutional standard of an ineffective attorney, we think, is going further than the federal procedural demands of a fair trial and the constitution require.'
"Wilson, 155 F.3d at 401 (quoting Waye v. Murray, 884 F.2d 765, 766-67 (4th Cir.1989)). The Fourth Circuit also noted that in Ake the defendant had not received any psychological evaluation. Id. The Wilson opinion concluded that `the decision in Ake reflects primarily a concern with ensuring a defendant access to a psychiatrist or psychologist, not with guaranteeing a particular substantive result.' Id. The Wilson court determined that the defendant's claims of Ake violations were without merit.
"Turning to the present case, Woodward seeks funds to retain the assistance of Dr. Timothy Summers, a licensed psychiatrist. Woodward contends that a `comprehensive forensic psychiatric examination is required to fully develop the material facts necessary for him to fairly litigate the claim pleaded in his habeas petition that, upon remand, the trial court denied him "the right to effective assistance of counsel by denying him funds to hire an independent psychiatrist."' Ex Parte Application for Expert Funds at 2. During trial, Woodward was examined by a psychologist at the state hospital who supplied both Woodward and the prosecution with a copy of his report. Woodward contends that the state hospital's evaluation was insufficient to provide his defense counsel with adequate information to challenge the state's expert.
". . . .
"Woodward's application is not well-taken. Woodward has not established that granting him the funds to retain Dr. Summers is `reasonably necessary' to pursue his habeas petition. Woodward is only entitled to funds pursuant to Section 848(q)(9) if he can demonstrate that the psychological assistance he received at trial did not meet the Ake standards. A review of Woodward's contention that he was not provided an adequate psychological evaluation at trial pursuant to Ake does not reveal that his claim warrants the appropriation of funds. 21 U.S.C. § 848(q)(9) was not intended to allocate funds to habeas petitioners to conduct a fishing expedition for proof to support their claims. Dr. Summers' affidavit suggests that a more in-depth psychiatric analysis of Woodward might reveal that Woodward suffered from other brain conditions that influenced his behavior at the time of the crime. According to Dr. Summers, such results could have been beneficial in providing mitigating circumstances during Woodward's re-sentencing. Woodward, however, has not shown how the trial-level evaluations fell below the Ake standards. Without proof of such, *293 Woodward's request for funds pursuant to Section 848(q)(9) is not `reasonably necessary.'"
380 F.Supp.2d at 790-93.
The rationale employed by the court in Woodward v. Epps is sound. A petitioner has no right to "shop around" for an expert at the State's expense. See Ex parte Moody, 684 So.2d 114 (Ala.1996). See also Granviel v. Lynaugh, 881 F.2d 185, 192 (5th Cir.1989) ("The state is not required to permit defendants to shop around for a favorable expert."). Before Burgess's trial Burgess had been evaluated by one mental-health expert on behalf of the State and two mental-health experts for the defense. There is no evidence indicating that the expert assistance he received at trial failed to meet the Ake standards. The circuit court did not err in denying Burgess's request for funds to hire yet more experts for the postconviction proceedings.

D.
Burgess next argues that trial counsel was ineffective for failing to develop or to present an adequate theory of mitigation.
The record shows that at the penalty phase of the capital trial counsel in his opening statement attacked the evidence of aggravating circumstances presented by the State and argued that Burgess was relying on the existence of four statutory mitigating circumstances to support a sentence of life imprisonment without the possibility of parole. Counsel argued that Burgess did not have a significant history of prior criminal activity, that Burgess was under the influence of extreme mental disturbance at the time of the murders, that Burgess was under extreme duress at the time of the murders, and that Burgess was only 26 years old when he committed the murders. Counsel made the following arguments in his opening statement in the penalty phase:
"Mr. Burgess came into this world, I think the testimony will tell you, without a father. There was no father ever in his life. He was raised by his mother who is mentally ill, who is paranoid schizophrenic. He started off his life like that, and he never knew his father. He was abused as a child through his relatives. . . . He had no brothers or sisters, and it forced him to be a lonely person, and to be somewhat of an outcast. He only had very few relatives who he could rely on. One was his grandmother, who was elderly and [was] not able to assist or help him. And, obviously as he grew older, he did very poorly in school He did not graduate from school. He went, I think, through the tenth grade. He, obviously, came from a dysfunctional family, and he, inevitably became addicted to drugs and alcohol."
(Record on appeal, p. 2864-65.) At the penalty phase, Burgess introduced the medical records of Burgess's mother, some of Burgess's school records, and Burgess's prison records from Mississippi.
Dr. John R. Goff also testified for the defense at the penalty phase. Dr. Goff testified that Burgess was raised in a dysfunctional home environment, that his mother was a diagnosed schizophrenic, and that Burgess had a mood disorder, had problems with substance abuse, had been abused by his uncles, and had an IQ of between 70 and 80  borderline mentally retarded.
At the Rule 32 evidentiary hearing Burgess presented the testimony of three witnesses to show that other mitigation evidence existed. Debbie Southward testified that Burgess had been a typical teenager and that he never gave her any problems. Johnny Southward testified that Burgess was a good person when he knew him and that Burgess would help him with his epileptic *294 seizures. Melissa Bennett testified that she had grown up with Burgess and that Burgess had helped people, that he had abused drugs, and that he had been abused by his uncles. All of these witnesses had had no connection with Burgess for many years before his capital trial.
The defense's strategy was so effective in the penalty phase that the jury recommended, by a vote of 8 to 4, that Burgess be sentenced to life imprisonment without the possibility of parole. Clearly, the trial strategy of Burgess's counsel was successful with the jurors. Therefore, we cannot say that Burgess is due relief on this claim.
Moreover,
"[w]hen claims of ineffective assistance of counsel involve the penalty phase of a capital murder trial the focus is on "`whether `the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death.'"' Jones v. State, 753 So.2d 1174, 1197 (Ala.Crim.App. 1999), quoting Stevens v. Zant, 968 F.2d 1076, 1081 (11th Cir.1992). See also Williams v. State, 783 So.2d 108 (Ala. Crim.App.2000). An attorney's performance is not per se ineffective for failing to present mitigating evidence at the penalty phase of a capital trial. See State v. Rizzo, 266 Conn. 171, 833 A.2d 363 (2003); Howard v. State, 853 So.2d 781 (Miss.2003), cert. denied, 540 U.S. 1197 (2004); Battenfield v. State, 953 P.2d 1123 (Okla.Crim.App.1998); Conner v. Anderson, 259 F.Supp.2d 741 (S.D.Ind.2003); Smith v. Cockrell, 311 F.3d 661 (5th Cir.2002); Duckett v. Mullin, 306 F.3d 982 (10th Cir.2002), cert. denied, 123 S.Ct. 1911 (2003); Hayes v. Woodford, 301 F.3d 1054 (9th Cir.2002); and Hunt v. Lee, 291 F.3d 284 (4th Cir.), cert. denied, 537 U.S. 1045 (2002)."
Adkins v. State, 930 So.2d 524, 536 (Ala. Crim.App.2001) (opinion on return to third remand). As we also stated in McWilliams v. State, 897 So.2d 437, 453-54 (Ala. Crim.App.2004):
"`Prejudicial ineffective assistance of counsel under Strickland cannot be established on the general claim that additional witnesses should have been called in mitigation. See Briley v. Bass, 750 F.2d 1238, 1248 (4th Cir.1984); see also Bassette v. Thompson, 915 F.2d 932, 941 (4th Cir.1990). Rather, the deciding factor is whether additional witnesses would have made any difference in the mitigation phase of the trial.' Smith v. Anderson, 104 F.Supp.2d 773, 809 (S.D.Ohio 2000), aff'd, 348 F.3d 177 (6th Cir.2003). `There has never been a case where additional witnesses could not have been called.' State v. Tarver, 629 So.2d 14, 21 (Ala.Crim.App.1993)."
Last, the United States Supreme Court stated in Wiggins v. Smith, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003), when reviewing a claim of ineffective assistance of counsel at the penalty phase of a capital trial:
"In Strickland [v. Washington, 466 U.S. 668 (1984)], we made clear that, to establish prejudice, a `defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' Id., at 694. In assessing prejudice, we reweigh the evidence in aggravation against the totality of available mitigating evidence."
539 U.S. at 534, 123 S.Ct. 2527.
In its sentencing order, the circuit court found as aggravating circumstances that Burgess was under a sentence of imprisonment *295 at the time of the murders and that Burgess had previously been convicted of a felony involving the use or threat of violence. In regard to mitigation, the circuit court found that Burgess's age at the time of the murders  26  was a mitigating circumstance and that the jury's recommendation of life imprisonment was a mitigating circumstance. The circuit court considered the evidence offered from Dr. Goff and other evidence related to Burgess's childhood, but it found none of that evidence to be mitigating.
In reviewing Burgess's claim of prejudice under Strickland we have independently reweighed the aggravating circumstances against the nonstatutory mitigating circumstances that were not presented at the penalty phase. We are confident that death was the appropriate sentence and that the alleged excluded evidence would not have effected the result. Wiggins v. Smith. Therefore, relief was correctly denied on this claim.

E.
Burgess argues that counsel failed to obtain adequate expert assistance during both the guilt phase and the penalty phase of his trial. Burgess made detailed allegations in his petition concerning this issue; however, he failed to present any evidence in support of this claim at the evidentiary hearing.
As this Court stated in Boyd v. State, 913 So.2d 1113, 1125 (Ala.Crim.App.2003):
"`Rule 32.6(b) requires that the petition itself disclose the facts relied upon in seeking relief.' Boyd v. State, 746 So.2d 364, 406 (Ala.Crim.App.1999). In other words, it is not the pleading of a conclusion `which, if true, entitle[s] the petitioner to relief.' Lancaster v. State, 638 So.2d 1370, 1373 (Ala.Crim.App. 1993). It is the allegation of facts in pleading which, if true, entitle a petitioner to relief. After facts are pleaded, which, if true, entitle the petitioner to relief, the petitioner is then entitled to an opportunity, as provided in Rule 32.9, Ala. R.Crim. P., to present evidence proving those alleged facts."
Burgess failed to meet his burden of proof in regard to this claim. Rule 32.3, Ala. R.Crim.P.
In his reply brief Burgess argues that "[s]everal of Mr. Burgess's claims are legal claims that arose on the record and did not require the presentation of additional testimony." (Burgess's reply brief at p. 2.)
What Burgess fails to consider is the clear wording of Rule 32.3, Ala.R.Crim.P.: "The petitioner shall have the burden of pleading and proving by a preponderance of the evidence the facts necessary to entitle the petitioner to relief." In discussing the distinction between pleading and proving this Court has stated:
"[A]t the pleading stage of Rule 32 proceedings, a Rule 32 petitioner does not have the burden of proving his claims by a preponderance of the evidence. Rather, at the pleading stage, a petitioner must provide only `a clear and specific statement of the grounds upon which relief is sought.' Rule 32.6(b), Ala. R.Crim.P. Once a petitioner has met his burden of pleading so as to avoid summary disposition pursuant to Rule 32.7(d), Ala.R.Crim.P., he is then entitled to an opportunity to present evidence in order to satisfy his burden of proof."
Ford v. State, 831 So.2d 641, 644 (Ala. Crim.App.2001). Burgess failed to meet his burden of proof in regard to this claim; thus, relief as to it was properly denied.

F.
Burgess argues that counsel was ineffective for failing to object to victim-impact *296 statements introduced to the circuit court before sentencing. On direct appeal, we stated:
"[T]here is no indication in this case that the victim impact statements were considered by the court in determining the appellant's sentence. To the contrary, the record in this case, like the record in Ex parte Land, [678 So.2d 224 (Ala. 1996),] demonstrates that the trial court determined the sentence in the manner established by § § 13A-5-47 to -52, Ala. Code 1975, because the court repeatedly referenced the Code sections in its findings."
Burgess, 723 So.2d at 766. We specifically addressed this issue on direct appeal and found no plain error; therefore, Burgess cannot establish that he was prejudiced. See Williams, supra.[7]

G.
Burgess argues that trial counsel was ineffective for failing to object to what he says were inflammatory photographs admitted into evidence. On direct appeal, this Court stated:
"The photographs now complained of portray the crime scene and the victim's bodies when they were discovered; thus, all are relevant. That the photographs are gruesome and may have aroused the passions of the jurors is a direct result of the fact that the victims were murdered in a brutal, gruesome manner."
Burgess, 723 So.2d at 764.
Because we specifically found no plain error on direct appeal, Burgess cannot show that he was prejudiced. See Williams, supra.

H.
Burgess argues that counsel failed to object to proceedings that were held without him being present. On direct appeal we stated:
"Burgess has not demonstrated that he suffered any prejudice as a result of his absence from the pretrial hearings. It is obvious that defense counsel believed that Burgess's presence would not be helpful to his defense, because counsel attempted to waive his presence. The Alabama Supreme Court recently observed, `This Court has not held, however, that a defendant has the right to be present at all pretrial proceedings without regard to whether the defendant's absence will prejudice the defendant.' Ex parte Trawick, 698 So.2d [162] at 177 [(Ala.1997)]. No plain error occurred as a result of Burgess's absence from one pretrial hearing and a portion of a second hearing.
"We have reviewed the portions of the record relating to the in-chambers discussion following defense counsel's motion that the victims' family be removed from [the] courtroom during voir dire proceedings and the in-chambers discussion regarding the brief suspension of Burgess's telephone privileges. We note that the record does not clearly indicate that Burgess was, in fact, absent from the discussion regarding the victims' family. Further, we hold that no plain error occurred as a result of Burgess's absence at either in-chambers discussion. The discussions related to minor procedural matters and motions *297 unrelated to Burgess's guilt or innocence, and Burgess's presence would not have benefited his defense. Burgess has not demonstrated any possibility of prejudice that resulted from his absence. Harris v. State, supra, 632 So.2d [503] at 510-12 [(Ala.Crim.App.1992), aff'd, 632 So.2d 543 (Ala.1993), aff'd, 513 U.S. 504 (1995)]."
723 So.2d at 760-61. Accordingly, Burgess can show no prejudice.

I.
Burgess argues that counsel failed to adequately object to the circuit court's failure to transcribe all of the proceedings in the circuit court.
The circuit court stated the following in its order concerning this claim:
"This claim is located in part II. A.11(H) on pages 10-11 of Burgess's amended petition. Burgess's claim `is speculative; he has not presented a single specific allegation suggesting that an incomplete record caused him to suffer prejudice [on appeal].' Boyd v. State, 746 So.2d 364, 381 (Ala.Crim.App.1999). The Court finds that this claim fails to comply with the specificity and full factual pleading requirements of Rule 32.6(b), A.R.Cr.P.; therefore, it is summarily dismissed. Rule 32.7(d), A.R.Cr. P."
The circuit court is correct. Burgess's entire pleading in his amended petition that related to this claim stated:
"Trial counsel failed to object adequately to the trial court's failure to transcribe all of the proceedings. At Mr. Burgess's trial, crucial bench conferences were not transcribed. (M.11, 42, 46, 122, R. 202, 217, 268, 330, 438, 475, 476, 570, 668, 943, 1071, 1192, 1282, 1417, 1423, 1657, 2101) Trial counsel should have objected to the failure to transcribe all of the proceedings."
No evidence was presented in support of these assertions.
On appeal Burgess argues that "[n]ot all forms of ineffective assistance of counsel require the presentation of testimonial evidence at an evidentiary hearing." (Burgess's brief at page 53.)
However, we have stated
"`Rule 32.6(b) requires that the petition itself disclose the facts relied upon in seeking relief.' Boyd v. State, 746 So.2d 364, 406 (Ala.Crim.App.1999). In other words, it is not the pleading of a conclusion `which, if true, entitle[s] the petitioner to relief.' Lancaster v. State, 638 So.2d 1370, 1373 (Ala.Crim.App. 1993). It is the allegation of facts in pleading which, if true, entitle a petitioner to relief. After facts are pleaded, which, if true, entitle the petitioner to relief, the petitioner is then entitled to an opportunity, as provided in Rule 32.9, Ala. R. Crim. P., to present evidence proving those alleged facts."
Boyd v. State, 913 So.2d 1113, 1125 (Ala. Crim.App.2003) (emphasis added). This claim lacked specificity and was properly dismissed on that basis.

J.
Burgess argues that the cumulative effect of his claims of ineffective assistance of counsel resulted in his being denied the effective assistance of counsel at the guilt phase of his capital trial.
As we recently stated in Brooks v. State, 929 So.2d 491 (Ala.Crim.App.2005):
"We can find no case where Alabama appellate courts have applied the cumulative-effect analysis to claims of ineffective assistance of counsel. However, the Alabama Supreme Court has held that the cumulative effect of prosecutorial misconduct necessitated a new trial in Ex parte Tomlin, 540 So.2d 668, 672 *298 (Ala.1988) (`We need not decide whether either of the two errors, standing alone, would require a reversal; we hold that the cumulative effect of the errors probably adversely affected the substantial rights of the defendant and seriously affected the fairness and integrity of the judicial proceedings.'). Also, in Ex parte Bryant, 951 So.2d 724 (Ala.2002), the Supreme Court held that the cumulative effect of errors may require reversal.
"If we were to evaluate the cumulative effect of the ineffective assistance of counsel claims, we would find that Brooks's substantial rights were not injuriously affected. See Bryant and Rule 45, Ala.R.App.P."
Burgess is likewise due no relief on this claim.

II.
Burgess argues that the circuit erred in denying relief on several other claims that it found to be procedurally barred. We agree with the circuit court that the following claims in Burgess's Rule 32 petition are procedurally barred:
(1) That the trial court considered victim-impact evidence when fixing Burgess's sentence;
(2) That prosecutorial misconduct at both phases of his trial deprived him of his rights to due process, a fair trial, and a reliable sentence;
(3) That the trial court violated his rights to due process by denying his request for a continuance;
(4) That the trial court failed to excuse for cause a juror who was unsuitable for service;
(5) That Burgess's absence from several stages of his capital proceedings violated his Fifth, Sixth, Eighth, and Fourteenth Amendments; and
(6) That the trial court failed to consider the nonstatutory mitigating circumstances that were presented during sentencing.
See Rule 32.2(a)(4) and (a)(5), Ala. R.Crim.P.

III.
Burgess argues that his death sentence violates the United States Supreme Court's decisions in Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), and Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).
The United States Supreme Court in Apprendi held that any fact which increases a punishment above the statutory limit must be presented to a jury and proven beyond a reasonable doubt. Ring extended this holding to death-penalty cases.
In Brooks v. State, 929 So.2d 491 (Ala. Crim.App.2005), we held:
"[T]he Supreme Court's decision in Ring does not apply retroactively to cases on collateral review. See McWilliams v. State, 897 So.2d 437 (Ala.Crim.App. 2004). The United States Supreme Court in Schriro v. Summerlin, 542 U.S. 348, 124 S.Ct. 2519 (2004), specifically held that its decision in Ring did not apply to death cases that were already final at the time that the decision was announced."
Burgess's case was final in November 1998, when this Court issued the certificate of judgment. Ring does not apply to this case.

IV.
Burgess, citing Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), argues that it is a violation of the Eighth Amendment of the United States Constitution to execute a mentally retarded individual and that he is borderline mentally retarded.
*299 The circuit court erroneously held that Burgess's claim of mental retardation was procedurally barred because it was not presented in a timely filed Rule 32 petition. As we stated in Clemons v. State, [Ms. CR-01-1355, August 29, 2003] ___ So.2d ___, ___ (Ala.Crim.App.2003):
"[W]e conclude that the decision in Atkins falls within Teague's first exception to the general rule of nonretroactivity and applies retroactively to cases that are on collateral review. [See Teague v. Lane, 489 U.S. 288 (1989)]. The other states that have addressed this issue since the decision in Atkins have also reached this same conclusion. See Russell v. State, 849 So.2d 95 (Miss.2003); Johnson v. State, 102 S.W.3d 535 (Mo. 2003); State v. Dunn, 831 So.2d 862 (La.2002)."
(Footnote omitted.) However, we may affirm a circuit court's ruling if it is correct for any reason. See Reed, supra.
After an exhaustive review of the records of both the direct appeal and the postconviction proceedings we see no indication that Burgess meets the definition of mental retardation adopted by the Alabama Supreme Court in Ex parte Perkins, 851 So.2d 453 (Ala.2002). In Perkins, the court adopted the most liberal definition of mental retardation employed by those states that bar the execution of the mentally retarded. The defendant must have (1) significantly subaverage intellectual functioning (an IQ of 70 or below); (2) significant or substantial deficits in adaptive behavior; and (3) the deficiencies must have manifested themselves during the developmental period (i.e., before the defendant reached age 18). Perkins, 851 So.2d at 456.
At the penalty phase, testimony was presented indicating that Burgess's IQ was between 70 and 80. Burgess completed the ninth grade and went one year to Oakleigh Mississippi Training School after he was convicted of a drug offense in the State of Mississippi. Records from the Mississippi Department of Corrections introduced for the postconviction proceedings showed one request for an inmate reclassification that contained the following remarks from the classification officer:
"Mr. Burgess has completed his training and instruction in the welding program at the vocational school and has had a good attendance and work record. We feel that Mr. Burgess is ready and deserving of this custody change at this time. He has been enrolled in the welding program for approximately 12 months. . . . This man is industrious, orderly and obedient."
(C.R. 666.)
The probation officer who conducted a six-hour interview with Burgess reported that he was "very cooperative and spoke at great length about his life." (Record on direct appeal, p. 29.) Burgess reported to the probation officer that he had had jobs operating heavy equipment, working as a welder, and working as a brick mason.
The witnesses who testified at the postconviction hearing also described Burgess as a normal child who was considerate, compassionate, and caring. One witness commented that Burgess had a brother who was mentally retarded. Also, at the time Burgess committed the murders he had been in a long-term relationship with Shelia Nnodimele.
Burgess is not mentally retarded under the most liberal definition of mental retardation adopted by the Alabama Supreme Court in Perkins. See also Ex parte Smith, [Ms. 1010267, March 14, 2003] ___ So.2d ___ (Ala.2003). Therefore, Atkins does not bar Burgess's sentence of death.

*300 V.
Burgess argues that the circuit court erred in refusing to consider most of his claims. He fails to identify what specific issues the circuit court erroneously failed to consider. Because we do not apply the plain-error standard of review to Rule 32 proceedings there is nothing for this Court to consider. See Rule 45A, Ala.R.App.P.

VI.
Burgess argues that he was denied an independent judicial review by the circuit court's wholesale adoption of the proposed order drafted by the State.
"The Alabama Supreme Court and this Court have repeatedly upheld a circuit court's wholesale adoption of a proposed order prepared by one of the parties. See Ex parte Masonite Corp., 681 So.2d 1068 (Ala.1996); DeBruce v. State, 890 So.2d 1068 (Ala.Crim.App.2003); Slaton v. State, 902 So.2d 102 (Ala.Crim. App.2003); Hamm v. State, 913 So.2d 460 (Ala.Crim.App.2002); Dobyne v. State, 805 So.2d 733 (Ala.Crim.App. 2000); Pierce v. State, 851 So.2d 558 (Ala.Crim.App.1999); Lawhorn v. State, 756 So.2d 971 (Ala.Crim.App.1999); Jones v. State, 753 So.2d 1174 (Ala.Crim. App.1999); Knotts v. State, 686 So.2d 431 (Ala.Crim.App.1995); Grayson v. State, 675 So.2d 516 (Ala.Crim.App. 1995); Sockwell v. State, 675 So.2d 4 (Ala.Crim.App.1993); Cade v. State, 629 So.2d 38 (Ala.Crim.App.1993); Hallford v. State, 629 So.2d 6 (Ala.Crim.App. 1992); Holladay v. State, 629 So.2d 673 (Ala.Crim.App.1992); Thompson v. State, 615 So.2d 129 (Ala.Crim.App. 1992); Wright v. State, 593 So.2d 111 (Ala.Crim.App.1991); Hubbard v. State, 584 So.2d 895 (Ala.Crim.App.1991); Weeks v. State, 568 So.2d 864 (Ala.Crim. App.1989); Morrison v. State, 551 So.2d 435 (Ala.Crim.App.1989)."
Coral v. State, 900 So.2d 1274, 1288 (Ala. Crim.App.2004), overruled on other grounds, Ex parte Jenkins, [Ms. 1031313, April 8, 2005] ___ So.2d ___ (Ala.2005).
For the foregoing reasons, we affirm the circuit court's order denying Burgess's Rule 32 petition.
AFFIRMED.
McMILLAN, P.J., and BASCHAB, J., concur.
SHAW, J., concurs in the result.
COBB, J., concurs in part and dissents in part, with opinion.
COBB, Judge, concurring in part and dissenting in part.
I agree with the majority's analysis except as to parts I.F., I.G., and I.H. of the opinion. As I stated in Hunt v. State, 940 So.2d 1041, 1073 (Ala.Crim.App. 2005)(Cobb, J., concurring in part and dissenting in part), and in my special writings in the cases cited therein, neither Alabama law nor due process allows for the preclusion of a finding of prejudice with regard to an ineffective-assistance-of-counsel claim solely because this Court or the Alabama Supreme Court examined the underlying substantive issue on direct appeal and found no plain error. Therefore, I dissent from those portions of the opinion that hold otherwise.

On Application for Rehearing
WISE, Judge.
The appellant, Alonzo L. Burgess, appealed the denial of his petition for postconviction relief filed pursuant to Rule 32, Ala.R.App.P., attacking his capital-murder conviction and sentence to death. We affirmed the circuit court's denial of Burgess's Rule 32 petition. See Burgess v. State, 962 So.2d 272 (Ala.Crim.App.2005). In resolving three issues in our opinion, *301 part I.F., I.G., and I.H., we held that because this Court on direct appeal had addressed the substantive issue and found no plain error Burgess could show no prejudice under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). We noted in footnote 7 that "The Alabama Supreme Court has not addressed whether a finding of plain error precludes a finding of prejudice under Strickland." 962 So.2d at 296 n. 7.
On the same date that we issued our decision, the Alabama Supreme Court released Ex parte Taylor, [Ms. 1040186, September 30, 2005] ___ So.2d ___ (Ala.2005). The Supreme Court in Taylor resolved the question whether a finding of no plain error precludes a finding of prejudice. The Supreme Court stated:
"Although it may be the rare case in which the application of the plain-error test and the prejudice prong of the Strickland test will result in different outcomes, a determination on direct appeal that there has been no plain error does not automatically foreclose a determination of the existence of the prejudice required under Strickland to sustain a claim of ineffective assistance of counsel. In determining whether to grant a Rule 32 petitioner relief on an ineffective-assistance claim, a court must examine both the plain-error and prejudice standards of review."
___ So.2d at ___.
In light of the Supreme Court's decision in Taylor, we have reexamined the issues in parts I.F., I.G., and I.H. of our opinion on original submission. In part I.F. of that opinion we addressed Burgess's claim that counsel was ineffective for failing to object to victim-impact evidence that was introduced before sentencing. Burgess presented no evidence at the Rule 32 hearing in support of this claim. As we stated in Payne v. State, 791 So.2d 383, 399 (Ala.Crim.App.1999) (opinion on return to remand): "Because it appears that [the appellant] did not present evidence at the evidentiary hearing with regard to [certain] claims . . ., we conclude that he has abandoned these claims and we will not review them."
In part I.G. of our opinion we addressed Burgess's claim that his counsel was ineffective for failing to object to allegedly inflammatory photographs. Burgess failed to present evidence in support of this claim at the Rule 32 hearing; therefore, he abandoned this claim.
Last, in part I.H. of our opinion we addressed Burgess's claim that his counsel failed to object to certain pretrial proceedings that were held in his absence. Burgess did not present any evidence in support of this claim at the evidentiary hearing; therefore, he abandoned this claim.
After carefully reviewing the Supreme Court's decision in Taylor and the issues raised in this case, we conclude that our original decision affirming the denial of Burgess's Rule 32 petition was correct.
APPLICATION FOR REHEARING GRANTED; AFFIRMED.
McMILLAN, P.J., and COBB, BASCHAB, and SHAW, JJ., concur.
NOTES
[1] The trial judge, the Honorable Inge Johnson, was appointed to the federal bench, and the Rule 32 petition was assigned to Judge N. Pride Tompkins. After Judge Tompkins left the bench the case was assigned to Judge Harold V. Hughston.
[2] Burgess raised other claims in his Rule 32 petition. Those claims, which Burgess fails to pursue on appeal, are deemed to be abandoned. See Brownlee v. State, 666 So.2d at 93.
[3] We note that Alabama's scheme of compensating attorneys appointed to represent indigent defendants was changed effective June 10, 1999, § 15-12-21(d)(1), Ala.Code 1975, to provide: "In cases where the original charge is a capital offense or a charge which carries a possible sentence of life without parole, there shall be no limit on the total fee."
[4] This Court may take judicial notice of its prior records on appeal. See Nettles v. State, 731 So.2d 626, 629 (Ala.Crim.App.1998).
[5] Burgess does not identify specific acts in his brief; he merely lists page numbers from the original record.
[6] We are aware of the Alabama Supreme Court's decision in Ex parte Casey, 889 So.2d 615 (Ala.2004), in which that Court prohibited the use of prior bad acts to prove identity. However, Casey is distinguishable from this case. As we recently noted in Stephens v. State, [Ms. CR-02-0154, August 12, 2005] ___ So.2d ___, ___ (Ala.Crim.App.2005), a case substantially similar to the present case:

"We note that the Alabama Supreme Court's decision in Ex parte Casey, 889 So.2d 615 (Ala.2004), while tightening the use of Rule 404(b) evidence to prove identity, did not prohibit the use of such evidence. Although Ex parte Casey addresses the admissibility of Rule 404(b) evidence in broad terms, we note that it is factually distinguishable in that Casey was charged with receiving stolen property, not homicide. Moreover, the Supreme Court in Ex parte Casey found the limiting instruction to be deficient, unlike the trial court's limiting instruction in this case. Finally, the collateral bad acts involved different victims, not the same victim, as was the case here."
[7] The Alabama Supreme Court has not addressed whether a finding of plain error precludes a finding of prejudice under Strickland. As that Court recently stated: "Nor do we address whether our determination of the absence of plain error forecloses a determination of the existence of the prejudice required under Strickland v. Washington, 466 U.S. 668 (1984), for a claim of ineffective assistance of counsel." Ex parte Martin, 931 So.2d 759, 769 (Ala.2004).