WELCH, Judge.
 

 Joseph B. Hooks, currently an inmate on death row at Holman Correctional Facility, appeals the circuit court’s denial of his petition for postconviction relief.
 

 In 1985, Hooks was convicted of murdering Donald Bergquist and Hannelore Bergquist during the course of a robbery. The jury recommended, by a vote of 7 to 5, that Hooks be sentenced to life imprisonment without the possibility of parole. The circuit court chose not to follow the jury’s recommendation and sentenced Hooks to death. Hooks’s conviction and death sentence were affirmed on direct appeal. See
 
 Hooks v. State,
 
 584 So.2d 329 (Ala.Crim.App.1987), affd, 534 So.2d 371 (Ala.1988), cert, denied, 488 U.S. 1050, 109 S.Ct. 883,102 L.Ed.2d 1005 (1989).
 

 In August 1989, Hooks filed a postcon-viction petition, pursuant to Rule 20, Ala. R.Crim.P.Temp.,
 
 [1]
 
 attacking his conviction and sentence. Hooks filed three amended petitions in March 1996, April 1999, and March 2002. The circuit court held an evidentiary hearing in December 2002. On June 27, 2005, the court issued a 30-page order denying the petition. This appeal followed.
 

 We stated the following facts surrounding the murders in our opinion on direct appeal:
 

 “John Henry Roberts, an enforcement agent with the Alabama Alcoholic Beverage Control Board, stated that at approximately 12:00 noon on November 16, 1984, he was looking for minors consuming alcohol in a wooded area off Mclnnis Road near Woodley Road in Montgomery. As he approached some abandoned houses on a dirt road, he noticed a man lying on the ground on the left side of the dirt road. Roberts got out of the ear and realized the man was dead. He radioed the ABC Board’s central office who alerted the police.
 

 “Roberts waited for a patrol car out on Mclnnis Road and led them to the scene. Upon his return to the scene, Roberts noticed some women’s shoes lying in the dirt road. The police then located the body of a woman approximately twenty-five yards from the other body. The woman was alive and making sounds.[
 
 2
 
 ]
 

 “Officer James Wicker made a video tape recording of the crime scene and of
 
 *776
 
 a 1977 Chevrolet automobile which was found in the Family Mart parking lot on South Boulevard in Montgomery. He testified that blood was found on the rear seat of the car. A woman’s purse and portions of a necklace were found on the rear floorboard and dashboard of the car. Two letters were found on the front dashboard of the car.
 

 [[Image here]]
 

 “Dr. Henry Santina performed the autopsy on Mr. Bergquist’s body. His examination revealed the victim sustained two entrance gunshot wounds and one exit wound. There was an entrance wound to the right side of the chest and an exit wound to the left side of the back. There was also an entrance wound to the right side of the victim’s chin. This wound was surrounded by stippling, which indicated a close range shot. The bullet from this gunshot severed the spinal column and was the cause of the victim’s death.
 

 “Dr. Thomas Gilchrist performed the autopsy on Mrs. Bergquist’s body. His examination revealed the victim sustained several gunshot wounds. The cause of her death was a gunshot wound to the head.
 

 [[Image here]]
 

 “Paul Seery testified that he was employed by Home Improvers on November 16, 1984. At approximately 7:15 a.m., the appellant picked up Seery at Home Improvers. The two drove to a job site in Prattville and began working. Around 9:15, the appellant told Seery he had to go to court and he left. He did not return until 1:00 p.m. Upon his return, the appellant told Seery that his court case had not come up yet and that he had to go back. He left again and returned at 3:30 to pick up Seery and drop him off at the company office. Seery stated that the appellant appeared normal each time he saw him that day.
 

 “The next day, the appellant came by Seery’s house and told Seery that he had lied about going to court the previous day. The appellant said he had family problems and had driven around all day drinking beer. He then told Seery that some people for whom he had been working had been killed and that he was a suspect. The appellant asked Seery to tell the police that he had been working with him all day on Friday. Seery agreed.
 

 “After hearing about the Bergquists’ shootings, Seery became suspicious of the appellant. When contacted by the police, Seery told them the truth about Friday’s events.
 

 [[Image here]]
 

 “Officer Richard Foster testified that he found a brown billfold containing business and credit cards belonging to Donald Bergquist in a dumpster located behind a building at 540 Clay Street on November 19, 1984, at 2:00 a.m. He stated that the address could have been that of Home Improvers. No money was found in the wallet.
 

 [[Image here]]
 

 “William Landrum, a serologist with the Department of Forensic Sciences, testified that he examined several items of evidence which were turned over to him. The belt, given to the police by the appellant’s wife, had bloodstains on it. Mrs. Bergquist’s shoes and slacks were bloodstained. These stains, as well as the stains on the paper towels found in the appellant’s yard, were Group O. Both victims’ blood type was Group O. Forty-five percent of the population of the U.S. also has Group 0 blood type.”
 

 Hooks,
 
 534 So.2d at 334-37. The evidence also showed that Hooks confessed to police
 
 *777
 
 that he shot and killed Donald and Hanne-lore Bergquist.
 

 Standard of Review
 

 This is an appeal from the denial of a postconviction petition that was initiated by Hooks. According to Rule 32.3, Ala. R.Crim.P. (formerly Rule 20.3, Ala.R.Crim. P.Temp.): “The petitioner shall have the burden of pleading and proving by a preponderance of the evidence the facts necessary to entitle the petitioner to relief.”
 

 “This Court does not apply a plain-error standard of review when reviewing a lower court’s ruling on the denial of a Rule 32 petition attacking a death sentence. See
 
 Ex parte Dobyne,
 
 805 So.2d 763 (Ala.2001), and Rule 45A, Ala. R.App.P. Moreover, all of the procedural bars contained in Rule 32 apply equally to all cases, even those involving the death penalty.”
 

 Brooks v. State,
 
 929 So.2d 491, 495 (Ala. Crim.App.2005). “The standard of review this Court uses in evaluating the rulings made by the trial court is whether the trial court abused its discretion. See
 
 Elliott v. State,
 
 601 So.2d 1118, 1119 (Ala.Crim.App. 1992).”
 
 Hunt v. State,
 
 940 So.2d 1041, 1049 (Ala.Crim.App.2005).
 

 “The burden of pleading under Rule 32.3 and Rule 32.6(b) is a heavy one. Conclusions unsupported by specific facts will not satisfy the requirements of Rule 32.3 and Rule 32.6(b). The full factual basis for the claim must be included in the petition itself. If, assuming every factual allegation in a Rule 32 petition to be true, a court cannot determine whether the petitioner is entitled to relief, the petitioner has not satisfied the burden of pleading under Rule 32.3 and Rule 32.6(b). See
 
 Bracknell v. State,
 
 883 So.2d 724 (Ala.Crim.App.2003). To sufficiently plead an allegation of ineffective assistance of counsel, a Rule 32 petitioner not only must ‘identify the [specific] acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment,’
 
 Strickland v. Washington,
 
 466 U.S. 668, 690, but also must plead specific facts indicating that he or she was prejudiced by the acts or omissions, i.e., facts indicating ‘that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.’ 466 U.S. at 694. A bare allegation that prejudice occurred without specific facts indicating how the petitioner was prejudiced is not sufficient.”
 

 Hyde v. State,
 
 950 So.2d 344, 356 (Ala. Crim.App.2006).
 

 Lastly,
 

 “ ‘The resolution of ... factual issued] required the trial judge to weigh the credibility of the witnesses. His determination is entitled to great weight on appeal.... “When there is conflicting testimony as to a factual matter ..., the question of the credibility of the witnesses is within the sound discretion of the trier of fact. His factual determinations are entitled to great weight and will not be disturbed unless clearly contrary to the evidence.” ’
 

 “Calhoun v. State,
 
 460 So.2d 268, 269-70 (Ala.Crim.App.1984) (quoting
 
 State v. Klar,
 
 400 So.2d 610, 613 (La.1981)).”
 

 Brooks,
 
 929 So.2d at 495-96.
 

 I.
 

 Hooks first argues that his due-process rights were violated by the circuit court’s wholesale adoption of the State’s proposed order denying postconviction relief. He argues that because the court made no independent findings of fact we should review his claims de novo — giving no deference to the lower court’s findings.
 

 
 *778
 
 As we stated in
 
 Hodges v.
 
 State,' [Ms. CR-04-1226, March 23, 2007] — So.3d —,—(Ala.Crim.App.2007):
 

 “Alabama Courts have repeatedly upheld the circuit court’s adoption of proposed orders drafted by the State in postconviction cases. For example, in
 
 Hyde v. State,
 
 950 So.2d 344 (Ala.Crim. App.2006), we stated:
 

 “ ‘Hyde contends that the circuit court erred in adopting the State’s proposed order. Specifically, he argues that there are numerous factual and legal errors in the order that indicate that the order does not represent the court’s own independent judgment, but shows a wholesale adoption of the State’s proposed order without consideration of his claims. However, this Court has repeatedly upheld the practice of adopting the State’s proposed order when denying a Rule 32 petition for postconviction relief. See, e.g.,
 
 Coral v. State,
 
 900 So.2d 1274, 1288 (Ala.Crim.App.2004), overruled on other grounds,
 
 Ex parte Jenkins,
 
 972 So.2d 159 (Ala.2005), and the cases cited therein. “Alabama courts have consistently held that even when a trial court adopts verbatim a party’s proposed order, the findings of fact and conclusions of law are those of the trial court and they may be reversed only if they are clearly erroneous.”
 
 McGahee v. State,
 
 885 So.2d 191, 229-30 (Ala.Crim.App. 2003).’
 

 “950 So.2d at 371.
 

 “Thus, even when a circuit court adopts a proposed order in its entirety, the petitioner must show that the findings of fact and conclusions of law in that order are ‘clearly erroneous’ before an appellate court will reverse the order solely on the basis that the order was submitted by the State.”
 

 For the reasons set out in this opinion, we find that the circuit court’s findings are not clearly erroneous.
 

 II.
 

 Hooks next argues that his right to an impartial jury was violated when three prospective jurors failed to answer questions during voir dire about whether they were related to law-enforcement personnel. He contends that one juror failed to disclose that his father was a judge — the judge who presided over Hooks’s preliminary hearing; another juror failed to answer that she was the sister-in-law of a former police officer in the police department that conducted the criminal investigation relating to the murders; and a third juror failed to disclose that she was the niece of a former Vermont state trooper.
 

 The circuit court made the following findings of fact on this claim:
 

 “Hooks’s claim of alleged juror misconduct is procedurally barred by Rules 32.2(a)(3) and (5), Ala.R.Crim.P. Hooks failed to proffer any facts in his petition (or at the evidentiary hearing) that would establish that this allegation, even if true, could not have been discovered by trial counsel in time to raise it in a motion for new trial. See
 
 Ex parte Pierce,
 
 851 So.2d 606, 614 (Ala.2000) (holding] that the preclusionary ground[s] of Rule 32.2 apply to allegations of juror misconduct); see also
 
 Woods v. State,
 
 [957 So.2d 492 (Ala. Crim.App.2004) ].
 

 “Although the juror misconduct claim is procedurally barred and due to be dismissed for that reason alone, the Court will, in the alternative, briefly discuss the claim’s lack of merit.
 

 “In paragraph 10(y) in the third amended petition, Hooks contends that he was prejudiced by three jurors’ failure to accurately answer voir dire ques
 
 *779
 
 tions. He specifically complains of Jurors [J.M.], [M.P.], and [D.M.].[
 
 3
 
 ] At the Rule 32 hearing, Hooks sought to admit affidavits in support of his claims concerning Jurors [J.M.] and [M.P.]. A telephone deposition, which was admitted at the hearing as [Hooks’s] Exhibit 36, was submitted in support of Hooks’s claim against Juror [D.M.].
 

 “Hooks contends that Juror [J.M.] failed to identify himself as the son of a judge who conducted petitioner’s preliminary hearing and appointed petitioner’s defense counsel. In support of this claim, Hooks offered an affidavit not of . [J.M.], but of his father. In the affidavit, [J.M.’s father] stated only that he was a district judge in Montgomery County from 1977 to 2001, and that he had a son named [J.M.]. At the Rule 32 hearing, although [J.M.’s father] was present and ready to testify, Hooks informed the Court that they would rely on his affidavit, and that they did not intend to call [J.M.’s father] as a witness. The State objected, arguing that the Court should take [J.M.’s father’s] testimony instead of the affidavit, and allow the State to elicit testimony from him concerning the juror misconduct claim, because the affidavit, standing alone, proved nothing. The Court refused, however, and informed the State that it could call [J.M.’s father] if it wanted to. Eventually, the Court put [J.M.’s father] on the stand, and he was questioned only by the State.
 

 “[J.M.’s father] said that in 1985, he did not know that his son was serving on a jury, and that he had no conversations with him about the case. [J.M.’s father] did not recall his involvement in the Hooks preliminary hearing. Clearly, Hooks has failed to meet his burden of proof as to this claim. He did not establish, nor can he, that [J.M.] failed to answer any question on voir dire, much less that even if he had known that his father had presided over Hooks’s preliminary hearing, his impartiality would have been compromised. See
 
 Brown v. State,
 
 807 So.2d 1 (Ala.Crim.App.1999). It is hard to imagine how Hooks could ever attempt to show that he might have been prejudiced without calling the juror to testify and questioning trial counsel about the specific juror. Hooks did neither.
 

 “Turning to Juror [M.P.], who died in 1998, Hooks offered the affidavits of [E.P.], [M.P.’s] husband, and [L.P.], [E.P.’s] brother and [M.P.’s] brother-in-law. The sole claim of misconduct with this juror was that she failed to identify on voir dire that her brother-in-law, [L.P.], had been an officer with the Montgomery County Police Department. Hooks did not present the testimony of either [E.P.] or [L.P.], offering that both were too elderly to attend the hearing, and that it would be a hardship — ‘a difficult experience’ — for them to come to court and testify. The State objected to the admission of the affidavits, and pointed out to the Court that [L.P.] ... was in good health and told counsel for the State that he had no problem coming to court.
 

 “Hooks again has failed to show that [M.P.’s] alleged failure to disclose the information might have prejudiced him at trial. He has offered nothing to show that the juror’s impartiality was called into question. Hooks has failed to meet his burden of pleading and proving as to this claim as well.
 

 “Lastly, Hooks contends that Juror [D.M.] failed to reveal that her uncle, who lived in Vermont, had been a police
 
 *780
 
 officer in Vermont from the ‘early 1950s until the late 1970s.’ In her telephone deposition, [D.M.] stated that since leaving Vermont when she was 18 ([D.M.] was born in 1952), she saw her uncle about once a year and spoke to him on the telephone every once in a while. When asked by Hooks’s counsel why she did not answer the question during voir dire concerning family members who were involved in law enforcement, [D.M.] said that she did not hear the question or that she was not paying attention. Despite Hooks’s assertion in the petition to the contrary, [D.M.] stated that she did not intentionally conceal this information. She said it was an innocent omission. [D.M.] further said that if she had heard the question, she would have answered it truthfully. She also stated that having an uncle in law enforcement had absolutely no bearing on her service as a juror — it did not cause her to be biased or prejudiced against Hooks.
 

 “As with the two previous claims of alleged juror misconduct, Hooks has again failed to meet his burden of proving juror misconduct. [D.M.] stated that she did not intentionally or willfully withhold this information. Although Charles Law [Hooks’s trial counsel] testified at the Rule 32 hearing that he would strike a juror who had indicated that they had a relative in law enforcement, this was the only question posed to trial counsel. Hooks did not question Law about any of the three specific jurors he now claims were impartial and biased jurors. This is insufficient to show that he might have been prejudiced by the jurors failure to respond to the question during voir dire.
 

 “Accordingly, Hooks’s juror misconduct claim is dismissed because it is procedurally barred and, in the alternative, because it is without merit.”
 

 (C.R. 4083-86.)
 

 First, this claim is procedurally barred in this postconviction proceeding because Hooks failed to establish that the claim could not have been raised in earlier proceedings. As we stated in
 
 Jenkins v. State,
 
 972 So.2d 165, 167 (Ala.Crim.App. 2005) (on remand from the Alabama Supreme Court):
 

 “The Alabama Supreme Court in
 
 [Ex parte] Pierce,
 
 [851 So.2d 606 (Ala.2000),] stated that in order for a juror-misconduct claim to be cognizable in a Rule 32 proceeding the petitioner must establish ‘that the information was not known, and could not reasonably have been discovered, at trial or in time to raise the issue in a motion for new trial or on appeal.’
 
 Pierce, 851
 
 So.2d at 616. Jenkins failed to meet his burden under Rule 32.3, Ala.R.Crim.P.”
 

 The Alabama Supreme Court reaffirmed its holding in
 
 Pierce
 
 in
 
 Ex parte Dobyne,
 
 805 So.2d 763 (Ala.2001). This Court has also held that similar juror-misconduct claims are barred. See
 
 Waldrop v. State,
 
 987 So.2d 1186 (Ala.Crim.App.2007);
 
 Hodges v. State,
 
 [Ms. CR-04-1226, March 23, 2007] — So.3d — (Ala.Crim.App. 2007);
 
 Duncan v. State, 925
 
 So.2d 245 (Ala.Crim.App.2005).
 

 Second, we agree with the circuit court that Hooks failed to meet his burden of showing that he was entitled to relief on this claim. To prevail on a claim of juror misconduct, the petitioner must establish that he “might have been prejudiced” by the jurors’ failure to respond truthfully to a question posed on voir dire. See
 
 Ex parte Stewart,
 
 659 So.2d 122 (Ala.1993).
 

 “It is true that the parties in a case are entitled to true and honest answers to their questions on voir dire, so that they may exercise their peremptory
 
 *781
 
 strikes wisely. See
 
 Fabianke v. Weaver,
 
 527 So.2d 1253 (Ala.1988). However, not every failure to respond properly to questions propounded during voir dire ‘automatically entitles [the defendant] to a new trial or reversal of the cause on appeal.’
 
 Freeman v. Hall,
 
 286 Ala. 161, 166, 238 So.2d 330, 335 (1970); see also
 
 Dawson v. State,
 
 [710 So.2d 472] at 474 [ (Ala.1997) ]; and
 
 Reed v. State,
 
 [547 So.2d 596 (Ala.1989) ]. As stated previously, the proper standard to apply in determining whether a party is entitled to a new trial in this circumstance is ‘whether the defendant might have been prejudiced by a veniremember’s failure to make a proper response.’
 
 Ex 'parte Stewa-rt,
 
 659 So.2d [122] at 124 [ (Ala. 1993) ]. Further, the determination of whether a party might have been prejudiced, i.e., whether there was probable prejudice, is a matter within the trial court’s discretion.”
 

 Ex parte Dobyne,
 
 805 So.2d 763, 771-72 (Ala.2001) (footnote omitted). In applying this standard we look at “the temporal remoteness of the matter inquired about, the ambiguity of the question propounded, the prospective juror’s inadvertence or willfulness in falsifying or in failing to answer, the failure of the juror to recollect, and the materiality of the matter inquired about.”
 
 DeBruce v. State,
 
 890 So.2d 1068, 1078 (Ala.Crim.App.2003), overruled on other grounds,
 
 Ex paite Jenkins,
 
 972 So.2d 159 (Ala.2005).
 

 The record shows that the prospective jurors were asked if they had any relatives who were involved in law enforcement. Juror J.M. might have believed that a judge did not fit within that classification. Also, J.M.’s father testified that he did not know that his son was on that jury and that he had had no discussions with his son about the case. Also, the only prospective juror who was questioned during the post-conviction proceedings was D.M. She stated that she did not hear the question about her relationship with law-enforcement personnel and that if she had she would have answered.
 
 [4]
 
 D.M. also said that her uncle’s employment as a state trooper in Vermont did not prejudice her in any way. We, like the circuit court, find no indication that Hooks might have been prejudiced by the jurors’ failure to respond to a voir dire question. Hooks failed to meet his burden of establish that he is entitled to relief on this claim.
 

 III.
 

 Hooks next argues that he was deprived of the effective assistance of counsel at both his trial and on direct appeal. He makes many arguments in support of this claim.
 

 To prevail on a claim of ineffective assistance of counsel, the petitioner must show: (1) that counsel’s performance was deficient; and (2) that the petitioner was prejudiced by the deficient performance. See
 
 Strickland v. Washington,
 
 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
 

 “Judicial scrutiny of counsel’s performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel’s assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel’s defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. Cf.
 
 Engle v. Isaac,
 
 456 U.S. 107, 133-34 (1982). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel’s challenged conduct, and to evaluate the conduct from
 
 *782
 
 counsel’s perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action ‘might be considered sound trial strategy.’ See
 
 Michel v. Louisiana,
 
 [350 U.S. 91], at 101 [ (1955) ]. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.”
 

 466 U.S. at 689, 104 S.Ct. 2052. As the United States Supreme Court further stated:
 

 “[S]trategie choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel’s judgments.”
 

 466 U.S. at 690-91,104 S.Ct. 2052.
 

 “[T]he purpose of ineffectiveness review is not to grade counsel’s performance. See
 
 Strickland [v. Washington
 
 ], [466 U.S. 668,] 104 S.Ct. [2052] at 2065 [ (1984) ]; see also
 
 White v. Singletary,
 
 972 F.2d 1218, 1221 (11th Cir.1992) (‘We are not interested in grading lawyers’ performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.’). We recognize that ‘[representation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another.’
 
 Strickland,
 
 104 S.Ct. at 2067. Different lawyers have different gifts; this fact, as well as differing circumstances from case to case, means the range of what might be a reasonable approach at trial must be broad. To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. But, the issue is not what is possible or ‘what is prudent or appropriate, but only what is constitutionally compelled.’
 
 Burger v. Kemp,
 
 483 U.S. 776, 107 S.Ct. 3114, 3126, 97 L.Ed.2d 638 (1987).
 

 [[Image here]]
 

 “Because the reasonableness of counsel’s acts (including what investigations are reasonable) depends ‘critically’ upon ‘information supplied by the [petitioner]’ or ‘the [petitioner]’s own statements or actions,’ evidence of a petitioner’s statements and acts in dealing with counsel is highly relevant to ineffective assistance claims.
 
 Strickland,
 
 104 S.Ct. at 2066. ‘[An] inquiry into counsel’s conversations with the [petitioner] may be critical to a proper assessment of counsel’s investigation decisions, just as it may be critical to a proper assessment of counsel’s other litigation decisions.’
 
 Id.
 
 (‘[W]hen a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel’s failure to pursue those investigations may not later be challenged as unreasonable.’).”
 

 Chandler v. United States,
 
 218 F.3d 1305, 1313-19 (11th Cir.2000) (footnotes omitted).
 

 
 *783
 
 “ ‘An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption [of effective representation]. Therefore “where the record is incomplete or unclear about [counsel]’s actions, we will presume that he did what he should have done, and that he exercised reasonable professional judgment.” ’
 
 Chandler v. United States,
 
 218 F.3d 1305, 1314 n. 15 (11th Cir.2000) (en banc) (quoting
 
 Williams v. Head,
 
 185 F.3d 1223, 1228 (11th Cir. 1999)).”
 

 Grayson v. Thompson,
 
 257 F.3d 1194,1218 (11th Cir.2001).
 

 At trial, Hooks was represented by attorney Charles Law. Law testified at the postconviction proceedings that he was admitted to practice law in 1976, he had been practicing law for 9 years when he was appointed to represent Hooks, and that 50 percent of his practice was in criminal law. On appeal, Hooks was represented by attorney Thomas Goggans. Goggans did not testify at the postconviction proceedings.
 

 A.
 

 Hooks first argues that the circuit court erroneously applied this Court’s holding in
 
 Williams v. State,
 
 783 So.2d 108 (Ala.Crim.App.2000), to bar his claims of ineffective-assistance-of-eounsel. In
 
 Williams,
 
 we held: “ ‘A finding of no manifest injustice under the “plain error” standard on a direct appeal serves to establish a finding of no prejudice under the test for ineffective assistance of counsel provided in
 
 Strickland v. Washington,
 
 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).’”
 
 Williams,
 
 783 So.2d at 133, quoting
 
 State v. Clark,
 
 913 S.W.2d 399, 406 (Mo.Ct.App. 1996).
 

 However, the Alabama Supreme Court in
 
 Ex parte Taylor,
 
 10 So.3d 1075 (Ala. 2005), specifically overruled this Court’s line of eases holding that a finding of no plain error on direct appeal precluded a finding of prejudice under the
 
 Strickland
 
 standard. The
 
 Taylor
 
 Court stated:
 

 “Although it may be the rare case in which the application of the plain-error test and the prejudice prong of the
 
 Strickland
 
 test will result in different outcomes, a determination on direct appeal that there has been no plain error does not automatically foreclose a determination of the existence of the prejudice required under
 
 Strickland
 
 to sustain a claim of ineffective assistance of counsel. In determining whether to grant a Rule 32 petitioner relief on an ineffective-assistance claim, a court must examine both the plain-error and prejudice standards of review.”
 

 10 So.3d at 1078.
 

 Initially, we note that this section of Hooks’s brief fails to comply with the requirements of Rule 28(a)(10), Ala.R.App.P. Rule 28(a)(10), AIa.R.App.P., governs the contents of appellate briefs; it states that the brief shall contain “an argument containing the contentions of the appellant/petitioner with respect to the issues presented, and the reasons therefor, with citations to the cases, statutes, other authorities and parts of the record relied on.” In this section Hooks fails to cite to any specific argument in regard to this claim. He merely cites pages in the record.
 

 Moreover, we have examined the pages cited by Hooks. In this portion of the record the State argued that the circuit court should not allow Hooks to present evidence concerning counsel’s ineffectiveness in regard to the motion to suppress. The State argued that because the substantive issue had been addressed on direct appeal this Court’s decision in
 
 Williams
 
 foreclosed a finding of prejudice. However, the circuit court disagreed with the State and did not limit Hooks’s presen
 
 *784
 
 tation of evidence to support this claim. Accordingly, we find no error.
 

 B.
 

 Hooks next contends that his trial counsel failed to adequately argue the motion to suppress his statement to police. Specifically, he argues that his videotaped statement was given without the benefit of Miranda
 
 [5]
 
 warnings and that it was coerced by police conduct; thus, he argues, it should have been suppressed.
 

 In addressing this claim, the circuit court made the following findings:
 

 “In paragraph 10(g)(i), (ii), and (iii), Hooks contends that trial counsel failed to ‘effectively’ represent him during the motion to suppress his videotaped statement to police. Specifically, counsel is alleged to have ‘fail[ed] to investigate adequately thé facts surrounding [his] arrest and videotaped statement,’ ‘fail[ed] to develop an effective presentation of the evidence in support of the motion to suppress,’ and ‘fail[ed] to object adequately to the admission of the videotaped statement.’
 

 “As a preliminary matter, Hooks failed to allege any specific actions that could have been taken by counsel that were not. Over the State’s objection, Hooks was allowed to present evidence at the Rule 32 hearing from the police officer who took Hooks’s statement. These identical claims, however, were raised and addressed by the Court of Criminal Appeals on direct appeal. In what constitutes approximately 18 pages of that Court’s opinion, the claim was found to be without merit.
 
 Hooks,
 
 534 So.2d at 332-50 (‘[Hooks] was interrogated in a non-custodial setting prior to his video statement, and thus,
 
 Miranda
 
 was not applicable. After he was advised of his
 
 Miranda
 
 rights, he gave his videotaped statement. The motion to suppress this statement was, thus, properly denied.’). Trial counsel cannot be ineffective for failing to more ‘effectively’ argue a claim found by the appeals court to be without merit.”
 

 (C.R. 4098-99.)
 

 On direct appeal this Court addressed, in depth, Hooks’s claims that his videotaped statement to police was erroneously admitted.
 
 [6]
 
 We ultimately held that “the appellant was interrogated in a non-custodial setting prior to his video statement, and thus,
 
 Miranda
 
 was not applicable”
 
 Hooks,
 
 534 So.2d at 349, and that the statement was not coerced by any promises made by police. 534 So.2d at 350.
 

 Hooks asserted in his postconviction petition that counsel was ineffective for failing to investigate the circumstances surrounding the statement, for failing to argue that Hooks was in custody when he made the statement, and for failing to object adequately to the admission of the statement.
 

 The record shows that a lengthy suppression hearing was held before trial. Law conducted an extensive cross-examination of Investigator J.W. Barnes, the officer who conducted the interview, and questioned him repeatedly concerning the circumstances surrounding Hooks’s statement. Also, Sgt. R.T. Ward of the Montgomery Police Department testified that he telephoned Hooks and asked him to come to the police department. He said that about one hour later Hooks and his wife arrived at the station. Law argued at
 
 *785
 
 the suppression hearing that the court should suppress the statement because Hooks was not given
 
 Miranda
 
 warnings although he was the prime suspect, because Hooks was promised that he would be able to make bond if he confessed, and because the videotaped statement did not accurately reflect what occurred.
 

 Law testified at the evidentiary hearing that he prepared extensively for the suppression hearing. He said it was their “main hope” to get the statement suppressed. Law did say that he thought that the jurors would respond favorably to Hooks’s demeanor on the videotape because he showed a great deal of remorse when confessing.
 

 In the postconviction proceedings, Hooks presented no new evidence that was omitted during the original suppression hearing except the exact location of the room where the interview had occurred at the station. Hooks failed to show that his counsel had rendered ineffective assistance in regard to the motion to suppress. “[TJrial counsel is not ineffective for having an objection overruled or a motion denied.”
 
 Boyd v. State,
 
 746 So.2d 364, 402 (Ala.Crim.App.1999). “An attorney’s failure to raise a meritless argument ... cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue.”
 
 United States v. Kimler,
 
 167 F.3d 889, 893 (5th Cir.1999). No matter what argument was made by counsel in regard to the motion to suppress the statement, the statement would have still been admissible. (See our lengthy discussion on direct appeal, 534 So.2d at 349-51.) The circuit court correctly denied relief on this claim.
 

 C.
 

 Hooks next argues that his trial and appellate counsel were ineffective for failing to challenge the State’s use of its peremptory strikes. Specifically, he asserts that counsel failed to object when the prosecutor used 19 of its 22 strikes to remove blacks from the venire.
 

 Hooks was convicted and sentenced in 1985. In 1986, the United States Supreme Court held in
 
 Batson v. Kentucky,
 
 471 U.S. 1052, 105 S.Ct. 2111, 85 L.Ed.2d 476 (1986), that black prospective jurors could not be excluded from a black defendant’s trial based solely on their race. In 1991, this holding was extended to white defendants in
 
 Powers v. Ohio,
 
 499 U.S. 400, 111 S.Ct. 1364,113 L.Ed.2d 411 (1991). Hooks is white.
 

 The circuit court, when denying relief on this claim, stated:
 

 “Hooks contends in paragraph 10(i) that trial counsel was ineffective for failing to object
 
 under Batson v. Kentuckyl,
 
 471 U.S. 1052 (1986),] to the prosecution’s allegedly racially motivated peremptory challenges. The only support for this claim offered by Hooks was that ‘at least 19 of 22 veniremembers stricken were black, and at least two others were also members of a minority group.’ This claim, based on numbers alone, is insufficiently pleaded. Hooks has offered nothing to show that the strikes were improperly based on race. Further, he presented no testimony from counsel concerning this claim, other than to ask counsel what certain letters on his strike sheet indicated, i.e., B, for black, F, for female, etc. Trial counsel also said that numbers written on the strike sheet represented the ages of the jurors.
 

 “Further, both Hooks and his victims were white. Neither
 
 Batson v. Kentucky
 
 nor
 
 Powers v. Ohio
 
 [, 499 U.S. 400 (1991),] had been decided at the time of Hooks’s trial in
 
 1985
 
 — Batson was not decided by the United States Supreme
 
 *786
 
 Court until April 30, 1986.
 
 Powers,
 
 which held that, under the Equal Protection clause, a criminal defendant may object to race-based exclusions of jurors through peremptory challenges whether or not the defendant and the excluded jurors share the same race, was not decided by United States Supreme Court until 1991.
 

 “Batson
 
 was not applicable because Hooks was white. It was not until the United States Supreme Court decided
 
 Powers
 
 in 1991 that
 
 Batson
 
 became applicable to his case. Both
 
 Batson
 
 and
 
 Powers
 
 were changes in the law.
 
 Farrell v. Davis,
 
 3 F.3d 370, 371-72 (11th Cir.1993). Alabama courts on many occasions have refused to hold trial counsel’s performance ineffective for failing to forecast changes in the law.
 
 Nicks v. State,
 
 783 So.2d 895, 922 (Ala.Crim.App. 1999), cert, quashed, 783 So.2d 926 (Ala. 2000);
 
 McArthur v. State,
 
 652 So.2d 782 (Ala.Crim.App.1994);
 
 State v. Tarver,
 
 629 So.2d 14,17-18 (Ala.Crim.App.1993);
 
 Duren v. State,
 
 590 So.2d 360 (Ala.Cr. App.1990), affd, 590 So.2d 369 (Ala. 1991), cert, denied, 112 S.Ct. 1594 (1992);
 
 Morrison v. State,
 
 551 So.2d 435 (Ala.Crim.App.1989), cert, denied, 495 U.S. 911 (1990). Counsel was not ineffective for failing to make a
 
 Batson
 
 motion (or a
 
 Swain v. Alabama
 
 motion) when, in 1985, any such motion would have been without merit.
 

 “Clearly, Hooks has failed to meet his burden of pleading and proving under Rules 32.3 and 32.6(b), Ala. R.Crim. P. For these reasons, this claim is denied.”
 

 (C.R. 4099-4100.)
 

 Hooks’s attorneys were not “ ‘obliged to object based on possible future developments in the law in order to render effective assistance.’ ”
 
 Thompson v. State,
 
 581 So.2d 1216, 1236 (Ala.Crim.App.1991). Neither was appellate counsel ineffective for failing to forecast changes in the law. “We will not hold counsel ineffective for failing to forecast changes in the law.”
 
 Nicks v. State,
 
 783 So.2d 895 (Ala.Crim. App.1999). The circuit court correctly denied relief on this claim.
 

 D.
 

 Hooks next argues that his counsel failed to ensure that he was protected from prejudicial pretrial publicity. Specifically, he argues that counsel should have moved for a change of venue or sought individual voir dire “to eliminate the prejudicial effect of highly biased pretrial publicity.” (Hooks’s brief at p. 42.) He further asserts that counsel failed to adequately conduct voir dire.
 

 The circuit coui't stated the following findings of fact on Hooks’s claim that counsel should have moved for a change of venue:
 

 “Hooks contends in Paragraph 10(d) that trial counsel was ineffective for failing to ‘take action so that the strong community sentiment against [him] and the highly prejudicial publicity surrounding the crime could be minimized and a fair trial obtained.’ Specifically, Hooks argues that counsel should have sought a change of venue, because ‘twenty-two potential jurors announced before the entire venire that they knew about the case.’ This is Hooks’s only support in the petition for his claim.
 

 “It is well-settled that the existence of widespread publicity does not require a change of venue.
 
 Mullís v. State,
 
 545 So.2d 205 (Ala.Crim.App.1989). Jurors do not have to be ignorant of the case, just able to lay aside any impressions or opinions and decide the case on the evidence presented.
 
 Fortenberry v. State,
 
 545 So.2d 129, 141 (Ala.Crim.App.1988). Hooks has failed to show that counsel, first, could have sustained the burden of
 
 *787
 
 proof to warrant a change of venue, but failed to as a result of his deficient performance, and, second, that he was prejudiced by counsel’s performance. Hooks identified no jurors whom he claimed were biased as a result of their knowledge of the case.
 

 “At the Rule 32 hearing, trial counsel testified that he did not believe a change of venue motion was necessary. It was Law’s opinion that there was not much more publicity in this case than that surrounding other murder cases at the time of Hooks’s trial. In fact, Law testified that another higher profile murder, where a black man had killed two white men, had taken over the headlines. Law also said that the Bergquists were not from Montgomery, and that there was ‘not a whole lot of knowledge of these people. If it hadn’t been a multiple killing, it probably wouldn’t have gotten any headlines.’ Law finally stated that he submitted questions about pretrial publicity for voir dire, and that none of the jurors said that they had been prejudiced by their knowledge of the case. Law noted that the jury was sequestered for trial. Rule 32 counsel offered only transcripts of news broadcasts and newspaper articles concerning the murders of the Bergquists.
 

 “Trial counsel’s decision concerning a change of venue was a reasonable strategic decision, which is virtually unchallengeable. See
 
 Ex parte Lawley,
 
 512 So.2d 1370, 1372 (Ala.1987). Thus, this claim is dismissed. Rules 32.3 and 32.6(b), Ala. R.Crim. P.”
 

 (C.R. 4095-97.)
 

 The circuit court’s findings are supported by the record. Law testified at the postconviction hearing that he did not move for a change of venue because he did not feel that it was necessary. (R. 273.) He did not believe that the case had received any more publicity than the average murder case. “This court has held that a decision not to request a change of venue is not ineffective assistance of counsel, but is rather a matter of trial strategy.
 
 Williams v. State,
 
 489 So.2d 4, 7 (Ala.Cr. App.1986).”
 
 Cox v. State,
 
 660 So.2d 233, 235 (Ala.Crim.App.1994).
 

 Hooks further asserts that his counsel’s performance was ineffective for not conducting an adequate voir dire. The circuit court made the following findings on this claim:
 

 “In paragraph 10(h)(i)-(iv), Hooks contends that trial counsel failed to ‘voir dire the jury adequately.’ Again, none of these claims have been pleaded with sufficient factual specificity, and no evidence was presented at the Rule 32 hearing concerning the claims. Trial counsel was not questioned about these alleged claims of ineffectiveness; thus, because the record is silent, counsel is presumed to have acted reasonably. Hooks abandoned this claim. Because he has failed to meet his burden of pleading and proving under Rules 32.6(b) and 32.3, Ala.R.Crim.P., this claim is dismissed.”
 

 (C.R. 4099.)
 

 In Hooks’s third amended postconviction petition he alleged the following:
 

 “Trial counsel failed to voir dire the jury adequately, including, but not limited to, the following:
 

 “(i) failing to object adequately to the court’s refusal to question the jury venire about their experiences with mental illness and drug or alcohol addiction;
 

 “(ii) failing to identify jurors who would, based on a capital conviction, automatically sentence petitioner to death in violation of his constitutionally protected rights;
 

 
 *788
 
 “(iii) failing to voir dire potential jurors about prejudice; and
 

 “(iv) failing to object to the exclusion of jurors who expressed scruples about the death penalty.”
 

 (C.R. 1851-52.)
 

 However, at the evidentiary hearing Law was not questioned as to his reasons for conducting the voir dire examination in the manner that he did, nor was any evidence presented as to what actions Law should have taken that he failed to do during voir dire. Clearly, Hooks failed to meet his burden of proof in regard to this claim. See Rule 32.3, Ala.R.Crim.P.
 

 Hooks also asserted that Law should have moved for individual voir dire. The record shows that Law filed a pretrial motion for individual voir dire examination. (Trial record, C.R. 746^17.) Before trial the circuit court denied the motion and stated: “If you have any problems at any time or anything else, the way I do it, just tell me. I’m not going to ask each one of them.” (Trial record, R. 123.) The voir dire also shows that when jurors answered some questions in the affirmative they were questioned individually. Accordingly, Hooks was due no relief on this claim.
 

 E.
 

 Hooks next argues that counsel was ineffective in defending him against the charge of robbery/murder. Specifically, he argues that counsel: (1) failed to argue that the State’s case of robbery/murder was insufficient; (2) failed to present evidence that disproved the State’s case; (3) helped the State make its case; (4) failed to object to the State’s misstatement of Alabama law of robbery/murder; and (5) failed to request an adequate instruction on robbery/murder.
 

 As the State correctly asserts in its brief, issues 1, 2, and 4 were not raised in Hooks’s Rule 32 petition; thus, they are not properly before this Court on appeal.
 
 [7]
 
 “ ‘[A]n appellant cannot raise an issue on appeal from the denial of a Rule 32 petition which was not raised in the Rule 32 petition.’ ”
 
 English v. State,
 
 10 So.3d 620, 621 (Ala.Crim.App.2007), quoting
 
 Arrington v. State,
 
 716 So.2d 237, 239 (Ala.Crim. App.1997).
 

 The circuit court also found that no evidence was presented at the evidentiary hearing concerning claims 3 and 5. It stated: “Because the record is silent as to all of these claims, counsel is presumed to have acted reasonably. Hooks chose to abandon these claims at the Rule 32 hearing.” (C.R. 4102.)
 

 We agree with the circuit court. When the record is silent as to the reasons for counsel’s actions we must presume that those actions were reasonable. See
 
 Robitaille v. State,
 
 971 So.2d 43, 73 (Ala.Crim. App.2005). Hooks abandoned these claims because he presented no evidence at the evidentiary hearing to support them. “As we stated in
 
 Payne v. State,
 
 791 So.2d 383, 399 (Ala.Crim.App.1999) (opinion on return to remand): ‘Because it appears that [the appellant] did not present evidence at the evidentiary hearing with regard to [certain] claims ..., we conclude that he has abandoned these claims and we will not review them.’ ”
 
 Burgess v. State,
 
 962 So.2d 272, 301 (Ala.Crim.App.2005). See also
 
 Brooks v. State,
 
 929 So.2d 491 (Ala. Crim.App.2005).
 

 
 *789
 
 F.
 

 Hooks next argues that his trial counsel failed to object to the “prosecution’s repeated misconduct.” Specifically, he argues that counsel was ineffective for failing to object to the prosecutor’s expressing his personal opinions, to victim-impact evidence that was introduced at the guilt and penalty phases, and when the court considered improper evidence contained in the presentence report.
 

 The State asserts that Hooks’s claim that counsel failed to object to improper victim-impact evidence at the guilt phase is not properly before this Court because this claim was not raised in Hooks’s postconviction petition.
 
 [8]
 
 “‘[A]n appellant cannot raise an issue on appeal from the denial of a Rule 32 petition which was not raised in the Rule 32 petition.’ ”
 
 English v. State,
 
 10 So.3d 620, 621 (Ala. Crim.App.2007), quoting
 
 Arrington v. State,
 
 716 So.2d 237, 239 (Ala.Crim.App. 1997).
 

 The State also asserts that the other claims were deemed abandoned because no evidence was presented in support of them at the evidentiary hearing.
 
 [9]
 
 We agree. See
 
 Burgess,
 
 supra.
 

 Moreover,
 

 “This court has held that ‘[objections are a matter of trial strategy, and an appellant must overcome the presumption that “conduct falls within the wide range of reasonable professional assistance,” that is, the presumption that the challenged action “might be considered sound trial strategy.”’
 
 Moore v. State,
 
 659 So.2d 205, 209 (Ala.Cr.App.1994), citing
 
 Strickland [v. Washington
 
 ], 466 U.S. [668] at 687-88, 104 S.Ct. [2052] at 2064-65, 80 L.Ed.2d 674 [ (1984) ].”
 

 Lane v. State,
 
 708 So.2d 206, 209 (Ala. Crim.App.1997). “[Effectiveness of counsel does not lend itself to measurement by picking through the transcript and counting the places where objections might be made. Effectiveness of counsel is not measured by whether counsel objected to every question and moved to strike every answer.”
 
 Brooks v. State,
 
 456 So.2d 1142, 1145 (Ala.Crim.App.1984).
 

 “ ‘Decisions concerning whether or when to make objections at trial are left to the judgment of counsel.’
 
 State v. Suarez,
 
 867 S.W.2d 583, 587 (Mo.App.1993). ‘Ineffective assistance of counsel is not to be determined by a post-trial academic determination that counsel could have successfully objected to evidence in a given number of instances.’
 
 Id.
 
 ‘The failure to object to objectionable evidence does not establish ineffective assistance of counsel unless the evidence resulted in a substantial deprivation of the accused [sic] right to a fair trial.’
 
 Id.
 
 ‘Counsel’s failure to object to particular evidence can constitute mere “trial error” not arising to constitutional proportions and thus not cognizable in a post-conviction motion.’
 
 Id.”
 

 State v. Radley,
 
 904 S.W.2d 520, 525 (Mo. App.1995). The circuit court correctly denied relief on this claim.
 

 
 *790
 
 G.
 

 Hooks next argues that his trial counsel failed to investigate and to present evidence in mitigation. Specifically, Hooks argues that his counsel failed to interview his parents, failed to prepare witnesses to testify about Hooks’s mental and drug problems, failed to obtain any evidence to support his drug defense, and failed to hire a medical expert to testify about his mental health and drug addiction.
 

 The circuit court made the following findings concerning this claim:
 

 “In paragraph 10(v)(i) and (ii), much like his earlier claim in paragraph 10(j), Hooks claims that trial counsel failed to investigate and present mitigating evidence through expert testimony at the penalty phase. Again, Hooks has not shown what expert testimony would have revealed that would have changed the outcome of his trial. Trial counsel stated that, in his opinion, Hooks was not insane at the time of the murders— an opinion confirmed by the mental evaluation performed at trial. Counsel must have done something right at sentencing, because he successfully obtained a recommendation from the jury of life imprisonment without the possibility of parole. Hooks nevertheless argues that the trial court was influenced by the lack of expert testimony in reaching it’s sentencing recommendation. The trial court considered evidence of Hooks’s drug abuse and psychiatric problems as mitigating circumstances. Because Hooks has not shown what more could have been presented that would have changed this outcome, he has failed to meet his burden of proof under Rule 32 and under
 
 Strickland [v. Washington,
 
 466 U.S. 668 (1984) ]. This claim is dismissed. See Rule 32.3 and 32.6(b), Ala. R.Crim.P.”
 

 (C.R. 4102-03.)
 

 We have reviewed the record of Hooks’s trial.
 
 [10]
 
 The record shows that Law presented three witnesses to testify in Hooks’s defense at the guilt phase of the proceedings. Two of these witnesses detailed Hooks’s long-term drug abuse. One witness testified that Hooks had been admitted to a local hospital for a drug overdose. David Hooks, Hooks’s adopted brother and a minister, testified that Hooks had a long history of drug abuse, that he frequently skipped school, and that he had been dismissed from the army because of his problems with drugs. Richard Davis, a friend of Hooks’s, testified that in the months preceding the murders he observed Hooks with marijuana and PCP
 
 [11]
 
 more frequently than had been his previous habit. At the penalty phase, Law presented the testimony of Joseph Hooks. Joseph Hooks testified that he and his wife adopted Hooks when he was 18 months old. Joseph said that as an adult, Hooks had a drug problem and that he tried to get him help. He pleaded for the jury to spare Hooks’s life. Joseph Hooks also testified that his wife could not participate in the trial because she was battling a terminal illness.
 

 Law argued at sentencing that Hooks committed the murders while under the influence of extreme mental or emotional disturbance because his drug intoxication bordered on insanity, and he had no control over his actions; he further argued that Hooks had no history of violent behavior before the murders, that his family had tried to get him help and had not been successful, and that Hooks would be pun
 
 *791
 
 ished sufficiently by having to spend years in prison if he was sentenced to life imprisonment without the possibility of parole. The jury found Law’s arguments so compelling that they recommended, by a vote of 7 to 5, that Hooks be sentenced to life imprisonment without the possibility of parole.
 

 “Appellant’s contention that his trial counsel rendered ineffective assistance of counsel during the penalty phase of the trial is repudiated by the fact that the jury recommended life in this case.
 
 Lewis v. State,
 
 398 So.2d 432 (Fla.1981);
 
 Douglas v. State,
 
 373 So.2d 895 (Fla. 1979). Further, we refuse to find counsel ineffective by relying on the jury recommendation and failing to present further mitigating evidence to the judge.
 
 Lewis.”
 

 Buford v. State,
 
 492 So.2d 355, 359 (Fla. 1986).
 

 Also, Law testified at the evidentiary hearing that he requested that Hooks be mentally evaluated before trial. Hooks was initially evaluated at the Montgomery Area Mental Health Authority. That agency recommended that Hooks be transferred to Taylor Hardin Secure Medical Facility for a more extensive assessment. The report completed by the doctors at Taylor Hardin concluded that Hooks was competent to stand trial and that he was not mentally ill at the time he committed the murders. Certainly, counsel is not ineffective for failing to present the testimony of an expert that is not favorable to his defense.
 

 Moreover, Law testified at the postcon-viction hearing that based on his conversations with Hooks he had no reason to believe that Hooks was out of his mind when he committed the murders. Law testified:
 

 “The first time or two I talked to Joe Hooks, I really wanted to ask him why — you’re alleged to have killed two people, and why was that. I mean, was there a reason or provocation or drug dealing or whatever. And his response to me was that he had tried to do some work for the Bergquists and they had advanced him some money to do some repair work at their home. He had not — or he had used the money, repair work money, to buy drugs and he did not have the money therefore to buy the materials to do the job. And he basically said — I’m going to say as best I can. I hope I don’t offend anybody — ‘those God damn Jews kept messing with me. I didn’t have the money, and I felt the best thing to do was kill them.’ ”
 

 (R. 290-91.)
 

 Law also testified that he had frequent discussions with David Hooks, who gave him a great deal of information on Hooks’s background. It is also clear that Law spoke with both of Hooks’s parents.
 

 Clearly this is not a case where Law did not investigate possible mitigation evidence. See
 
 Wiggins v. Smith,
 
 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003). Hooks failed to satisfy the
 
 Strickland
 
 test in regard to this claim; thus, he is due no relief.
 
 [12]
 

 H.
 

 Hooks also argues that his counsel was ineffective for making disparaging re
 
 *792
 
 marks about him. Specifically, he argued in his postconviction petition that counsel agreed with the probation officer that Hooks showed no remorse and that counsel had said that Hooks tried to cover up the crime as “any animal would,” and that Hooks would not have committed the murders if he had been “sober.”
 

 The circuit court found that this claim was abandoned because Hooks presented no evidence at the postconviction hearing concerning this claim. See
 
 Burgess,
 
 supra. We agree that Hooks abandoned this claim.
 

 Moreover, we have reviewed the record. The record shows that counsel did not say that Hooks showed no remorse. The page cited by Hooks in his postconviction petition shows that Law was arguing why parts of the probation officer’s report should have been excluded from evidence. He argued that the probation officer concluded that Hooks showed no remorse and that that portion of the report should be excluded. (Trial record, R. 653.)
 

 Also, when arguing during the sentencing hearing before the circuit court Law asserted that the aggravating circumstance of robbery was not present because Hooks’s actions showed that he was merely trying to cover up his crime like “any animal would” and had no intent to commit a robbery. (Trial record, R. 696-97.) Last, at the same hearing Law argued that the court should find that the murder occurred while Hooks was under extreme mental or emotional disturbance because the evidence showed that Hooks would not have committed the murder if he had been sober. (Trial record, R. 700-01.)
 

 I.
 

 Hooks further argues that trial counsel failed to raise the claim that Alabama’s sentencing scheme is unconstitutional. The circuit court correctly found that this claim was abandoned because Hooks did not present any evidence at the hearing in support of this claim. See
 
 Burgess,
 
 supra.
 

 Moreover, we have repeatedly upheld Alabama’s capital-murder sentencing scheme against constitutional attacks.
 
 Eatmon v. State,
 
 992 So.2d 64 (Ala.Crim. App.2007);
 
 Flowers v. State,
 
 922 So.2d 988 (Ala.Crim.App.2005);
 
 Clark v. State,
 
 896 So.2d 584 (Ala.Crim.App.2003).
 

 J.
 

 Hooks next argues that his appellate counsel was ineffective. He merely presents a laundry list of claims that he asserts should have been raised on appeal but without making any specific argument in support of any of the claims.
 

 The circuit court stated the following concerning this claim:
 

 “In Claim A in the third amended petition, paragraphs 12 and 13 (and all subparts of those paragraphs), Hooks contends that he was denied effective assistance of appellate counsel. There were no claims of ineffective assistance of appellate counsel raised in Hooks’s original petition.
 

 “Hooks’s claims of ineffective assistance of appellate counsel are due to be dismissed because he has failed to meet his burden of proof. Rules 32.3 and 32.6(b). In this claim, Hooks contends that appellate counsel was ineffective for not raising a litany of claims on direct appeal, or for not ‘adequately’ arguing claims that were raised on appeal. Aside from listing the claims of alleged error, no argument appears in the petition to show deficient performance and prejudice. Oddly enough, Hooks did not call appellate counsel, Thomas Goggans, as a witness at the Rule 32 hearing. Nor did he present any evidence or ar
 
 *793
 
 gument concerning his claims of ineffective assistance of appellate counsel at the hearing. ‘Appellate counsel is presumed to exercise sound strategy in the selection of issues most likely to afford relief on appeal.’
 
 Thomas v. State,
 
 766 So.2d 860, 876 (Ala.Crim.App.1998). Further, many of the alleged errors were addressed on appeal and decided adversely to Hooks. He did not offer any evidence to show how counsel could have argued more ‘adequately’ the claims, such that the appeals courts would have decided them differently. Moreover, the Court of Criminal Appeals on direct appeal searched the record for any error that might have adversely affected Hooks’s substantial rights and found none. Rule 45A, Ala. R.App.P. Because Hooks has utterly failed to meet his burden of proving deficient performance and prejudice under Rule 32 and under
 
 Strickland v. Washington,
 
 466 U.S. 668 (1984), these claims of ineffective assistance of appellate counsel are dismissed. Rule 32.2(6)(b) and 32.3, Ala.R.Crim.P. Hooks has, in essence, abandoned these claims.
 
 Cf. Payne v. State,
 
 791 So.2d 383 (Ala. Crim.App.1999), cert, denied, 791 So.2d 408 (Ala.2000).”
 

 (C.R. 4103-04.)
 

 As we stated in
 
 DeBruce v. State,
 
 890 So.2d 1068, 1093-94 (Ala.Crim.App.2003):
 

 “A defendant has the right to the effective assistance of counsel in his appeal to this Court. See
 
 Cochran v. State,
 
 548 So.2d 1062 (Ala.Crim.App.), cert, denied, 493 U.S. 900, 110 S.Ct. 259, 107 L.Ed.2d 208 (1989). DeBruce argues on appeal that his appellate counsel should have raised an additional 33 issues before this Court. Mathis represented DeBruce on appeal and signed the brief prepared by the anti-death-penalty organization known as the Equal Justice Initiative. The brief presented 13 issues, and this Court issued a very lengthy opinion addressing those issues. ‘ “[W]e emphasize that the right to effective assistance of appellate counsel does not require an attorney to advance every conceivable argument on appeal which the trial record supports.”
 
 Gray v. Greer,
 
 778 F.2d 350 at 353 (7th Cir.1985) (emphasis added [in Cochran]), citing
 
 Evitts v. Lucey,
 
 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985).’
 
 Cochran,
 
 548 So.2d at 1069-70.
 

 “ ‘ “[E]xperienced advocates have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues. Selecting the most promising issues for review has assumed a greater importance in an era when the time for oral argument is strictly limited in most courts and when page limits on briefs are widely imposed.” ’
 

 “Boyd v. State,
 
 746 So.2d 364, 403 (Ala. Crim.App.1999), quoting
 
 Jones v. Barnes,
 
 463 U.S. 745, 746, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983).”
 

 The record is silent as to why the cited claims were not raised on direct appeal. Attorney Goggans was not called to testify about his strategy on appeal. When a record is silent as to the reasons for an attorney’s actions we must presume that counsel’s conduct was reasonable. See
 
 Grayson v. Thompson,
 
 257 F.3d 1194,1218 (11th Cir.2001). Hooks was due no relief on this claim.
 

 IV.
 

 Hooks next argues that the circuit court erred in barring his substantive claims that supported his claims of ineffective assistance of counsel. His entire argument consists of one paragraph that lists many claims that, he argues, the court
 
 *794
 
 should have addressed on the merits. This section of Hooks’s brief fails to comply with Rule 28(a)(10), Ala.R.App.P.
 

 Moreover, the substantive issues supporting the claims of ineffective assistance of counsel were correctly deemed to be procedurally barred because they could have been raised at trial or on appeal. See Rules 32.2(a)(3) and (a)(5), Ala. R.Crim.P. Also, many of the claims were addressed by this Court on direct appeal. See Rule 32.2(a)(4), Ala.R.Crim.P.
 

 Furthermore, the circuit court correctly barred the following claims:
 

 (1) Alabama’s system of legal assistance for indigents in capital cases violates Hooks’s right to the effective assistance of counsel;
 

 (2) Alabama’s capital sentencing scheme is unconstitutional based on the decision in
 
 Ring v. Arizona,
 
 536 U.S. 584 (2002);
 
 [13]
 

 (3) The indictment failed to state the aggravating circumstances that the State relied on to seek the death penalty;
 
 [14]
 

 (4) The appellate courts failed to make an independent determination that the statutory aggravating circumstance outweighed the mitigating circumstances;
 

 (5) Alabama’s sentencing scheme allows the judge to consider evidence not presented to the jury;
 

 (6) The appellate courts failed to conduct a proportionality review as required by law;
 

 (7) Alabama’s sentencing scheme as applied to him is unconstitutional based on
 
 Ring;
 

 (8) Alabama’s sentencing scheme is unconstitutional because, he argues, the verdict that the murder occurred during a robbery forced Hooks to chose between his right to remain silent and his right to rebut the aggravating circumstance;
 

 (9) The appellate courts violated his constitutional rights by failing to find plain error;
 

 (10) The trial court improperly refused to question the jury venire about their experiences with mental illness and drug or alcohol addiction;
 

 (11) The cumulative effect of the errors denied him his rights under federal and state law; and
 

 (12) Executing him after having kept him on death row for more than two decades constitutes cruel and unusual punishment.
 
 [15]
 

 These claims were procedurally barred because they could have been raised at trial or on appeal but were not.
 
 [16]
 
 See Rules 32.2(a)(3) and (a)(5), Ala.R.Crim.P.
 

 
 *795
 
 V.
 

 Last, Hooks argues for the first time in his brief to this Court that Alabama’s judicial override statute, § 13A-5-47(e), Ala.Code 1975, is unconstitutional, both on its face and as applied to him, because, he says, it results in the arbitrary application of the death penalty based on political pressures.
 
 [17]
 
 He further asserts that Alabama’s judicial override violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.
 

 These claims were not raised in Hooks’s third amended postconviction petition. They are raised for the first time on appeal; thus, they are not properly before this Court. “ ‘[A]n appellant cannot raise an issue on appeal from the denial of a Rule 32 petition which was not raised in the Rule 32 petition.’ ”
 
 English v. State,
 
 10 So.3d 620, 621 (Ala.Crim.App.2007), quoting
 
 Arrington v. State,
 
 716 So.2d 237 (Ala.Crim.App.1997).
 

 For the foregoing reasons, we affirm the circuit court’s denial of Hooks’s postconviction petition.
 

 AFFIRMED.
 

 BASCHAB, P.J., and McMILLAN, SHAW, and WISE, JJ., concur.
 

 [1]
 

 . Rule 20, Ala.R.Crim.P.Temp., became Rule 32, Ala.R.Crim.P., when the Alabama Rules of Criminal Procedure were adopted effective January 1, 1991.
 

 [2]
 

 . Mrs. Bergquist was taken to a local hospital, where she died six days later from gunshot wounds to her head.
 

 [3]
 

 . We are using initials to protect the anonymity of the jurors.
 

 [4]
 

 . It appears that two questions were asked at the same time.
 

 [5]
 

 .
 
 Miranda v. Arizona,
 
 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694(1966).
 

 [6]
 

 . These issues had been raised in the circuit court; thus, they were not reviewed on direct appeal under the plain-error standard by this Court.
 

 [7]
 

 . Law testified at the evidentiary hearing that he did not contest the robbery element of the robbery/murder charge because he did not think such a contest would be successful. He said that he had done that in a prior case and had been unsuccessful. (C. 273-74.)
 

 [8]
 

 . The only claim in Hooks's Rule 32 petition that could be remotely related to this assertion is that counsel was ineffective for "failing to object adequately to one prosecutor's improper statement: T see a family, family members of the Bergquists (C.R. 1855.) It appears that counsel was stating that members of the Bergquist family were in the courtroom. Counsel did object to this statement and the prosecutor did not finish his argument.
 

 [9]
 

 . On direct appeal we addressed many claims of prosecutorial misconduct. Also, the record does show that counsel objected to portions of the presentence report.
 

 [10]
 

 . This Court may take judicial notice of its own records. See
 
 Hull v. State,
 
 607 So.2d 369, 371 (Ala.Crim.App.1992).
 

 [11]
 

 . PCP is phencyclidine. It is often referred to as "angel dust.”
 

 [12]
 

 . Hooks further argues in this section of his brief that counsel was ineffective for failing to obtain a jury instruction on insanity. This issue was not raised in Hooks’s Rule 32 petition; therefore, it is not properly before this Court. See
 
 English,
 
 supra.
 

 Moreover, we noted on direct appeal that Law did request a charge that excessive intoxication can amount to insanity. The circuit court refused to give this instruction. We held on direct appeal that Hooks was not entitled to such an instruction.
 
 Hooks,
 
 534 So.2d at 353.
 

 [13]
 

 . Hooks’s conviction did not violate the holding in
 
 Ring.
 
 See
 
 Minor v. State,
 
 914 So.2d 372 (Ala.Crim.App.2004). The jury found that dre murders were committed during the course of a robbery. This finding made Hooks eligible for the death penalty.
 

 Also,
 
 Ring
 
 does not apply retroactively to cases on collateral review. See
 
 Sanders v. State,
 
 815 So.2d 590 (Ala.Crim.App.2001).
 

 [14]
 

 . We have held that the aggravating circumstances do not have to be included in the indictment. See
 
 Benjamin v. Slate,
 
 940 So.2d 371 (Ala.Crim.App.2005).
 

 [15]
 

 . The Alabama Supreme Court in
 
 Ex parte Bush,
 
 695 So.2d 138, 140 (Ala. 1997), addressed this issue and held: "[W]e find no merit in Bush’s argument that the same constitutional protections that have kept him from being executed for the past 16 years are simultaneously violating his constitutional rights.”
 

 [16]
 

 . Hooks raised many other claims in his postconviction petition but did not pursue them on appeal. Those claims not raised on appeal are deemed abandoned. See
 
 Brownlee v. State,
 
 666 So.2d 91, 93 (Ala.Crim.App. 1995).
 

 [17]
 

 . This statute has withstood constitutional challenge. See
 
 Tomlin v. State,
 
 909 So.2d 213 (Ala.Crim.App.2002), rev'd on other grounds, 909 So.2d 283 (Ala.2003).